*In re* FRANZEL

1. PARENT AND CHILD—INFANTS—STATUTES—EVIDENCE.

   A jury's finding that the infant daughter of an unmarried mother was a neglected child was supported by the weight of the evidence where witnesses testified that the mother had repeatedly failed to care for the physical needs of the child, had exhibited a marked lack of affection for her, had, both before and after the child's birth, discussed with social workers the possibility of giving the child up for adoption, had placed the child in a foster home without any display of emotion, and had repeatedly exhibited a marked preference for, and partiality to, an older child (MCLA § 712A.2(b) [1]).

2. PARENT AND CHILD—INFANTS—STATUTES—UNMARRIED MOTHER—INADEQUATE SUPPORT.

   A jury's finding that an unmarried mother was without adequate provision for the care and support of her infant daughter was sufficiently supported by the evidence where the child's grandmother, who had contributed to the child's support, admitted that the source of her contributions—certain social security payments—had been terminated and where the mother's aid to dependent children payments had been ended when she placed her child in a foster home (MCLA § 712A.2(b) [2]).

3. PARENT AND CHILD—INFANTS—JURISDICTION—VERDICT—CORRECTION OF FORM.

   A jury verdict that the trial court should, rather than does, have jurisdiction in statutory proceedings to terminate parental rights of an unmarried mother did not require reversal of the jury verdict that the mother's minor daughter was a neglected child where the court had clearly instructed the jury

---

REFERENCES FOR POINTS IN HEADNOTES

[1–4] 39 Am Jur, Parent and Child § 35 *et seq.*
[3, 4] 39 Am Jur, Parent and Child § 3.

that they could find the child was neglected only if they felt the facts regarding the mother's neglect were within the statutory language and where, after questioning the jury regarding the form of their verdict, the court was satisfied that they had made a proper determination; therefore, correction of the form of the verdict was proper inasmuch as the word "should" was excess.

4. PARENT AND CHILD—INFANTS—NEGLECTED CHILDREN—TERMINATION OF RIGHTS.

Termination of an unmarried mother's parental rights, after a jury had found that she had neglected her infant daughter, was proper and in the child's best interests where social workers testified that in their opinion parental rights should be terminated, the child's guardian *ad litem* stated that although he believed the mother should not have custody her parental rights should not be permanently terminated, the infant daughter was shown to have a special problem with allergies and needed special care, and the mother had given birth to a third illegitimate child who was being passed back and forth among relatives.

Appeal from Lapeer, James P. Churchill, J. Submitted Division 2 April 9, 1970, at Lansing. (Docket No. 3,878.) Decided June 22, 1970. Leave to appeal denied August 13, 1970. 383 Mich 817.

The parental rights of Veronica Stella Franzel were terminated by court order as to Barbara Ellen Franzel. Eleanor Koss, general guardian of Veronica Stella Franzel, appeals. Affirmed.

*Carras & Carras,* for Eleanor Koss.

Before: McGregor, P. J., and Danhof and Larnard,* JJ.

Larnard, J. This is an appeal from a circuit court order terminating parental rights. This case originated in the Probate Court of Lapeer County,

_____
* Circuit judge, sitting on the Court of Appeals by assignment.

where a petition was filed alleging that Barbara Ellen Franzel was a neglected child under the provisions of MCLA § 712A.2(b), (Stat Ann 1962 Rev § 27.3178 [598.2]). The probate court found that it had jurisdiction under the above statute and entered an order terminating the parental rights of Barbara's mother, Veronica Franzel. An appeal was taken to the circuit court where a jury trial was conducted on the issue of neglect and the jury found that Barbara was in fact a neglected child. A separate hearing was conducted by the circuit court on the issue of a proper order of disposition and an order terminating all parental rights was subsequently entered.

The first issue presented on this appeal is whether the jury verdict finding Barbara to be a neglected child was contrary to the weight of the evidence presented. Proceedings under the Michigan statute, MCLA § 712A.2(b), require a two-step procedure. First, a finding must be made that the case falls within the statute, thus giving the court jurisdiction over the matter. Second, if it is determined that the court does have jurisdiction, it must make a proper order of disposition. *In re Mathers* (1963), 371 Mich 516.

Appellant cites the cases of *Fritts* v. *Krugh* (1958), 354 Mich 97, and *In re Mathers* (1963), 371 Mich 516, to the effect that a showing of neglect must be made in order to justify the termination of parental rights under MCLA § 712A.2(b). Accepting the correctness of this position, the question becomes whether or not sufficient facts were shown to bring the case within the statute, which in relevant part provides that the court shall have:

"(b) Jurisdiction in proceedings concerning any child under 17 years of age found within the county,

"(1) Whose parent or other persons legally responsible for the care and maintenance of such child, when able to do so, neglects or refuses to provide proper or necessary support, education as required by law, medical, surgical or other care necessary for his health, morals or well-being;

"(2)   *   *   *   or whose mother is unmarried and without adequate provision for care and support."

The appellees' theory in the circuit court was that the case fell within (1) above because the mother had neglected to take proper care of the child and had shown a marked preference for the older child, and also under (2) above, because the mother was unmarried and without the means to adequately provide for the child.

The record indicates that various persons testified regarding the issue of neglect.

Mr. Ralph Samuelson, a social worker, testified that Barbara's mother contacted him before Barbara was born, and discussed the possibility of giving up the baby, and also indicated that she did not feel the same way about Barbara that she felt about her older child.

Mrs. Patsy Meachum, another social worker, testified that on November 30, 1965, she placed Barbara in a foster home acting at the mother's request. She further testified that when the child was left at the foster home, the mother showed no signs of emotion and failed to write down the name and address of the foster home, whereas when the older child was temporarily placed in foster care, the mother showed a great deal of emotion and was careful to get the name and address of the foster home. Further testimony by Mrs. Meachum indicated that the mother had said that she felt differently about Barbara than she did about the older child, that she wanted Barbara to be adopted and that on one occa-

sion she indicated that she was desirous of having both children placed in a foster home so that she could travel with a man who worked for a carnival.

Manley Gordon French, a minister in whose home the mother and children had lived for 11 months, testified that the mother had neglected Barbara and showed a definite preference for the older child. He further testified that:

"There was a recurring difficulty of stale bottles, carelessly prepared formula, wet diapers, not changing frequently enough, matters of this type that we were assuming the responsibility for, and evidently, it would not have been done had we not done it."

Mr. French also stated that Barbara's mother showed partiality in dividing clothing between the children, always giving the best to the oldest child, and that the mother did not give Barbara the kind of love and care that a child that age needs.

The criteria for determining what constitutes neglect is not at all clear. However, in *Fritts* v. *Krugh* (1958), 354 Mich 97, 116, the Court said:

"There must be real evidence of long-time neglect or serious threats to the future welfare of the child."

The repeated failure to care for the physical needs of the child, together with a marked lack of affection and marked preference for another child, were sufficient to support the finding by the jury that Barbara was neglected and that such finding was not contrary to the weight of the evidence.

Appellees' theory was further based on MCLA § 712A.2(b)(2) because of the fact that Barbara's mother was unmarried and without adequate means to care and support Barbara. Appellant admits that the mother was unmarried, but contends that she

was able to provide for the child since she was receiving money from Mrs. Koss and from Aid to Dependent Children. However, Mrs. Koss admitted that the source of this money was certain social security payments which terminated in the fall of 1965. The ADC payments were received when the mother was living with the Frenches, and they terminated when she placed the child in foster care in November of 1965. We therefore find that this provision of the statute MCLA § 712A.2(b)(2), was satisfied by the above findings.

Appellant claims that the form of the jury verdict was improper and that the verdict should be reversed on account of this error. We do not agree with appellant's contention that the form of the jury verdict requires reversal.

The following form of verdict was given to the jury by the trial judge:

"One possible form, we find the court does have jurisdiction; two, we do not find that the court has jurisdiction."

The verdict announced by the foreman of the jury was that the court *should* have jurisdiction, rather than *does* have jurisdiction. When this ground was raised in the trial court, the judge indicated that he had questioned the jury and was satisfied that they had made a proper determination. The determination of this question falls under the principle that errors in the form of the verdict can be corrected by the court. *Standard Oil Co.* v. *Gonser* (1951), 331 Mich 29. The court very clearly instructed the jury they could find for the appellee only if they felt that the facts were within the statutory language. The jury found for the appellee and the use of the word "should" can be regarded as surplus verbiage to which the appellant attaches undue importance.

We find no merit in appellant's contention that the original petition was collusive and filed as a means of circumventing the adoption code.

The second stage of the proceedings under the above statute, the proper order of disposition by the court, is alleged by the appellant to have been improper. After a determination of neglect has been made, thus bestowing upon the court jurisdiction in the case, the remaining question becomes what disposition is in the best interests of the child. The underlying philosophy of this determination was set forth in the opinion of *Greene* v. *Walker* (1924), 227 Mich 672, 675, holding:

"The paramount question under the law in all cases of this character is the welfare of the child. All other considerations must yield to this one. The dying wish of the mother, the desire and purpose of the father, the otherwise superior right of either father or mother even the wish of the child herself, are and must not be entirely controlling."

And in the case of *Weiss* v. *Weiss* (1913), 174 Mich 431, 438:

"While the wishes and affections of the parents for the child are not to be ignored, they are a secondary consideration. The primary consideration is the welfare and happiness of the child, from the standpoint of education, moral and religious training, good influences, care, kind treatment, pleasant environments and future prospects."

The record indicates that the trial court conducted extensive hearing on the matter of the proper disposition of Barbara. At the hearing, testimony was taken from Bernice Tunison, juvenile court case worker; Ralph Samuelson, a social worker; Veronica Franzel, Barbara's mother; and Eleanor Koss, Barbara's grandmother.

At the time of the hearing, Barbara's mother was 20 years old, was working as a barmaid and earning approximately $75 a week, and contributing $10 a week to the support of the oldest child who is living with Mrs. Koss. The mother had given birth to a third illegitimate child which was being passed back and forth between Mrs. Koss and another relative.

Both Mr. Samuelson and Mrs. Tunison testified at the hearing that they were of the opinion that parental rights should be terminated, whereas Mr. Michael Carter, Barbara's guardian *ad litem* was of the opinion that the mother should not have custody at that time, but did not want the rights terminated permanently. There was also evidence presented as well as testimony that Barbara had a special problem with allergies and needed special care.

We find, from a completed search of the record, that the trial judge made an exhaustive determination of the facts in this case and made proper order of disposition in the best interests of the child, Barbara. Our Supreme Court, in the case of *In re Ernst* (1964), 373 Mich 337, 342, 343, stated:

"In such circumstances we have no right—no right whatever—to overrule or disregard Judge Fenlon's finding and order upon the best interest question; 'the determination of the judge as to the facts being conclusive'."

See *Corrie* v. *Corrie* (1880), 42 Mich 509, followed to the point in *In re Sneden* (1895), 105 Mich 61; *Carpenter* v. *Carpenter* (1907), 149 Mich 138; and *In re Gould* (1913), 174 Mich 663.

Affirmed. No costs, a question of public policy being involved.

All concurred.