## IN THE MATTER OF BAILEY

Docket No. 64364. Submitted January 13, 1983, at Lansing.—Decided May 4, 1983.

On July 8, 1981, the Jackson County Department of Social Services petitioned the Jackson Probate Court to exercise jurisdiction in the case of Daphne Anne Bailey, infant daughter of William and Beatrice Bailey, who are both mentally retarded. adults. Daphne Bailey was born on May 2, 1981. She had several congenital abnormalities, including a heart defect and a cleft lip. She was microcephalic and mentally retarded. On July 6, 1981, Daphne was removed from the custody of the Baileys and taken to a hospital for examination and observation. An attorney was appointed for appellants. On August 5, 1981, an adjudication hearing was conducted. The probate court found Daphne to be neglected and made her a temporary ward of the court. She was placed in a foster care home and a dispositional hearing was scheduled for September 1, 1981. The Baileys were ordered to obtain psychological evaluations and were granted visitation according to a schedule to be arranged by the Department of Social Services. On September 1, 1981, the probate court ordered Daphne continued as a temporary ward and ordered the Baileys to participate in counseling, parenting classes, and visitation as arranged. On October 13, 1981, Daphne's cleft lip was surgically repaired. A review hearing was conducted on December 1, 1981. Following the recommendation of Susan Fulton, the DSS caseworker, the probate court continued Daphne's temporary ward status and ordered William Bailey to attend school or obtain employment and Beatrice Bailey to participate in a day treatment program. The court ordered both parents to attend all of Daphne's doctor appointments, continue parenting classes, attend training school with Daphne at least twice a month, and attend visitations. On March 2, 1982, caseworker Fulton again reported to the probate court. While appellants had attempted to follow all

REFERENCES FOR POINTS IN HEADNOTES
[1, 2, 4] 59 Am Jur 2d, Parent and Child §§ 5, 39, 40.
[3] 5 Am Jur 2d, Appeal and Error § 819.

court orders and DSS recommendations, Fulton reported that the prognosis appeared poor for their improvement as parents. She stated they had apparently been genuinely unable to learn or change from their experiences. Apparently pursuant to Fulton's recommendation, the probate court continued Daphne as a temporary ward by its review hearing order of March 9, 1982, and ordered a show cause hearing to be held on April 29, 1982, relevant to the permanent termination of appellants' parental rights. After hearing all testimony, the court made its findings of fact. It found Daphne had special needs as a result of her congenital defects and would require special supervision for up to 25 years. It was also found that both parents had limited intellectual capacities, that Beatrice also had a personality disorder characterized by immaturity, dependency, and inability to deal in a social setting, and that both parents were absorbed in each other and would be unable, both now and in the future, to provide the nurture and care which Daphne needed due to her special needs and appellants' special limitations. The trial court then terminated appellants' parental rights under the statute which allows termination upon a finding of neglect. The Baileys appealed. *Held:*

1. Termination of parental rights for the reason of neglect requires a showing of intentional or culpable neglect on the part of the parent. The court erred in terminating parental rights because of neglect rather than mental deficiency.

2. The statute providing for the termination of parental rights of parents unable to provide proper care because of mental illness or deficiency requires only that the mental deficiency preclude proper care of the child for a period of two years without likelihood of improvement in the near future. It does not require that such a period must lapse before termination can be effected. Parental rights should have been terminated for mental deficiency. The Court of Appeals will not reverse a lower court decision reaching a right result for a wrong reason.

Affirmed.

H. W. Moes, J., dissented. He agreed that the trial court erred in terminating parental rights because of neglect. However, he believed that the statute providing for the termination of parental rights of parents unable to provide proper care because of mental illness or deficiency precludes a termination of rights until a period of at least two years has elapsed. He would reverse and remand.

OPINION OF THE COURT

1. PARENT AND CHILD — CHILD NEGLECT — TERMINATION OF PAREN-
   TAL RIGHTS.

   Termination of parental rights for the reason of neglect requires
   a showing of intentional or culpable neglect on the part of the
   parent (MCL 712A.19a[e]; MSA 27.3178[598.19a][e]).

2. PARENT AND CHILD — TERMINATION OF PARENTAL RIGHTS — MEN-
   TAL ILLNESS OR DEFICIENCY.

   The statute providing for the termination of parental rights of
   parents unable to provide proper care because of mental illness
   or deficiency requires only that the mental deficiency preclude
   proper care of the child for a period of two years without
   likelihood of improvement in the near future; it does not
   require that such a period must lapse before termination can
   be effected (MCL 712A.19a[c]; MSA 21.3178[598.19a][c]).

3. APPEAL — HARMLESS ERROR.

   The Court of Appeals will not reverse a lower court decision
   reaching a right result for a wrong reason.

DISSENT BY H. W. MOES, J.

4. PARENT AND CHILD — TERMINATION OF PARENTAL RIGHTS — MEN-
   TAL ILLNESS OR DEFICIENCY.

   *The statute providing for the termination of parental rights of
   parents unable to provide proper care because of mental illness
   or deficiency precludes a termination of rights until a period of
   at least two years has elapsed; termination under that statute
   requires a showing that: 1) a mental deficiency or illness
   renders the parent or guardian unable to provide proper care
   and custody for the child, 2) a two-year period has elapsed
   during which the inability to provide such care and custody has
   continued to exist, and 3) no reasonable expectation exists that
   the parent or guardian will thereafter be able to assume care
   and custody of the child within a reasonable period of time.*

*Edward J. Grant,* Prosecuting Attorney, and
*Brian E. Thiede,* Chief Appellate Attorney, for the
Jackson County Department of Social Services.

*James S. Treciak,* guardian ad litem of Daphne
Ann Bailey.

*Barton, Benedetto & Bishop* (by *Arthur E. Bene-
detto),* for William and Beatrice Bailey.

Before: D. E. HOLBROOK, JR., P.J., and CYNAR and H. W. MOES,* JJ.

PER CURIAM. Respondents appeal as of right the termination of their parental rights as ordered by the Jackson County Probate Court on April 29, 1982.

Daphne Bailey was born to appellants, both mentally retarded adults, on May 2, 1981. She had several congenital abnormalities, including a heart defect and a cleft lip. She was microcephalic and mentally retarded. On July 6, 1981, Daphne was removed from the custody of appellants and taken to a hospital for examination and observation.

On July 8, 1981, the Jackson County Department of Social Services petitioned the probate court to take jurisdiction. An attorney was appointed for appellants. On August 5, 1981, an adjudication hearing was conducted. The probate court found Daphne to be neglected and made her a temporary ward of the court. She was placed in a foster home and a dispositional hearing was scheduled for September 1, 1981. Appellants were ordered to obtain psychological evaluations and were granted visitation according to a schedule to be arranged by the department of social services.

On September 1, 1981, the probate court ordered Daphne continued as a temporary ward and ordered appellants to participate in counseling, parenting classes, and visitation as arranged. On October 13, 1981, Daphne's cleft lip was surgically repaired.

A review hearing was conducted on December 1, 1981. Following the recommendation of Susan Fulton, the DSS caseworker, the probate court continued Daphne's temporary ward status and ordered

---

* Circuit judge, sitting on the Court of Appeals by assignment.

appellant William Bailey to attend school or obtain employment and Beatrice Bailey to participate in a day treatment program. He ordered both parents to attend all of Daphne's doctor appointments, continue parenting classes, attend training school with Daphne at least twice a month, and attend visitations. On March 2, 1982, caseworker Fulton again reported to the probate court. While appellants had attempted to follow all court orders and DSS recommendations, Fulton reported that the prognosis appeared poor for their improvement as parents. She stated they had apparently been genuinely unable to learn or change from their experiences.

Apparently pursuant to Fulton's recommendation, the probate court continued Daphne as a temporary ward by its review hearing order of March 9, 1982, and ordered a show cause hearing to be held on April 28, 1982, relevant to the permanent termination of appellants' parental rights. After hearing all testimony, the court made its findings of fact. It found Daphne had special needs as a result of her congenital defects and would require special supervision for up to 25 years. It was also found that both parents had limited intellectual capacities and that Beatrice also had a personality disorder characterized by immaturity, dependency, and inability to deal in a social setting. Both parents were absorbed in each other and would be unable, both now and in the future, to provide the nurture and care which Daphne needed due to her special needs and appellants' special limitations. The trial court then terminated appellants' parental rights under MCL 712A.19a(e); MSA 27.3178(598.19a)(e), which allowed termination upon a finding of neglect.

First, appellants claim the probate court erred

in terminating their parental rights pursuant to subsection (e) of MCL 712A.19a; MSA 27.3178-(598.19a) rather than subsection (c).

The proper standard of review by this Court for cases involving termination of parental rights is somewhat unclear. We need not, however, decide whether the correct standard is *de novo,* see *Bahr v Bahr,* 60 Mich App 354, 360; 230 NW2d 430 (1975), or a "clearly erroneous" standard, see MCL 600.866(1); MSA 27A.866(1), since we would reach the same decision under either. See *In the Matter of Mudge,* 116 Mich App 159; 321 NW2d 878 (1982).

Appellants argue that their parental rights were terminated because of their inability to care for their child due to their mental deficiency. Further, they argue that, since there was no showing of intentional or culpable neglect on their part, the probate judge erred in terminating parental rights for the reason of neglect rather than mental deficiency. We agree.

Neglect per se is defined neither in Michigan's statute nor case law. In general, however, MCL 712A.2(b); MSA 27.3178(598.2)(b) provides the basis for the assumption of jurisdiction by the juvenile division of the probate court. This statute would seem to support appellants' argument that a termination for reasons of neglect requires a finding of some intent or culpability. Jurisdiction over a child may be assumed when a parent who is "able to do so" fails to properly care for the child. Several cases have found neglect and affirmed termination of parental rights. See *In re Franzel,* 24 Mich App 371, 377; 180 NW2d 375 (1970); *In the Matter of Adrianson,* 105 Mich App 300; 306 NW2d 487 (1981), and *In the Matter of Baby X,* 97 Mich App 111; 293 NW2d 736 (1980).

Review of the findings in the present case do not support termination of appellants' rights for the reason of neglect as anticipated by statute and case law. Nevertheless, we find the findings to have been justified pursuant to subsection (c).

The professionals who testified at the hearing, together with Fulton, the assigned caseworker, felt that termination was desirable because appellants' inherent mental deficiencies would prevent them from giving their retarded child the special attention and care she required. Hence, both the findings and evidence support termination under subsection (c).

Having determined that the probate court erred in its choice of statutory provisions, despite reaching a correct result, it must be determined whether such error was harmless or whether reversal is warranted. Appellants argue for the latter, interpreting the two-year provision in MCL 712A.19a(c) to mean that there must be a two-year waiting period between the time the court assumes jurisdiction and the time parental rights are terminated. Appellants argue that by the terms of said statute, they should have been given a two-year grace period, only at the end of which could their parental rights have been terminated. They argue this additional time would allow them time to improve their parenting skills.

We disagree, however, with appellants' statutory interpretation. The statute requires only that the mental deficiency preclude proper care of the child for a period of two years without likelihood of improvement in the near future. It does not state that such a period must lapse before termination can be effected. Indeed, such an interpretation would be pointless herein. Once it was determined that appellants were mentally retarded, that their

chances of overcoming their attendant emotional instabilities were minimal at best, and that their conformity to all demands made by the court did not appreciably change their long-term prognosis, any further delay of termination proceedings would merely postpone the inevitable and keep the child in limbo.

We hold the probate court's termination of parental rights under subsection (e) rather than subsection (c) was therefore harmless error. Where the lower court reaches the right result for the wrong reason, this Court will not reverse. *DeWitt Twp v Clinton County,* 113 Mich App 709, 713; 319 NW2d 2 (1982). This rule deserves application in the present case.

Our disposition of appellants' first claim renders it unnecessary to discuss appellants' additional allegation of error.

Affirmed.


H. W. Moes, J. *(dissenting).* Although I agree with the decision of the majority insofar as it holds that the probate court proceeded under the inappropriate section of the statute, I respectfully disagree with their conclusion that the error can be deemed harmless.

Daphne Bailey was born on May 2, 1981. The order permanently terminating parental rights was entered less than one year later, on April 29, 1982. The statutory provision on which the majority relies provides the following:

"Where a child remains in foster care in the temporary custody of the court following the initial hearing provided by section 19, the court may make a final determination and order placing the child in the permanent custody of the court, if it finds any of the following:

\*   \*   \*

"(c) A parent or guardian of the child is unable to provide proper care and custody for a period in excess of 2 years because of a mental deficiency or mental illness, without a reasonable expectation that the parent will be able to assume care and custody of the child within a reasonable length of time considering the age of the child." MCL 712A.19a(c); MSA 21.3178(598-.19a)(c).

In my opinion, the language of the statute is clear and unambiguous. It expressly precludes the probate court from terminating parental rights on the basis of a finding of mental deficiency or mental illness which renders the parent or guardian unable to provide proper care and custody until a period of at least two years has elapsed. To hold otherwise renders as mere surplusage the language which requires the probate court to make a separate finding that there is no reasonable expectation that the parent will be able to assume care and custody of the child within a reasonable period of time thereafter.

A well-settled rule of statutory construction is that all language of a statutory provision is presumed to have meaning and no words or phrases should be treated as surplusage or rendered nugatory. *Melia v Employment Security Comm,* 346 Mich 544, 562; 78 NW2d 273 (1956). Furthermore, where a statute contains language which is clear and unambiguous, judicial construction which alters the plain meaning of the statute is prohibited. *Lawrence v Dep't of Corrections,* 88 Mich App 167, 171; 276 NW2d 554 (1979). In my opinion, a plain reading of the above-quoted statutory language compels a conclusion that, in order to effect termination of parental rights under § 19a(c), three things must be shown:

(1) that a mental deficiency or mental illness renders the parent or guardian unable to provide proper care and custody for the child;

(2) that a two-year period has elapsed during which the inability to provide such care and custody has continued to exist; and

(3) that no reasonable expectation exists that the parent or guardian will thereafter be able to assume care and custody of the child within a reasonable period of time.

In my view, the statutory provision requiring the two-year period of delay reflects a legislative determination that mentally ill or mentally deficient persons who are unable to initially provide adequate care for their children should be given a period of time in which to receive treatment or education and training which will enable them to provide such care. It further reflects an unwillingness on the part of the Legislature to permit the probate court to make a finding, prior to the time the two-year period expires, that such treatment, training, and education will be useless.

Many persons who suffer from mental illness or other mental deficiencies are able to lead relatively normal and productive lives. It has long been recognized that the familial relationship occupies a basic position in our society's hierarchy of values. The fundamental nature of parental rights is a liberty interest protected by the Due Process Clause of the Fourteenth Amendment. *In the Matter of Kozak,* 92 Mich App 579, 581-582; 285 NW2d 378 (1979). In my view, the parental rights of these appellants should be as zealously guarded as are those same rights held by other members of society. Although it is true that protracted termination proceedings might be detrimental to the child, in my opinion, the two-year delay period reflects a

legislative balancing of interest which is intended
to insure that the child's interests are protected
while at the same time safeguarding the rights of
persons who are parents and who also happen to
suffer from some form of mental illness or mental
deficiency.

The result reached by the majority permits a
probate court to summarily and completely termi-
nate the parental rights of persons suffering from
mental illness or mental deficiency without the
benefit of the passage of a period of time long
enough to accurately determine whether the par-
ents may be able to improve their ability to care
for their child. The findings of the probate court
with respect to the capacity of such parents to care
for their children might well be used against those
parents in later proceedings should they conceive
other children. See *In re Dittrick Infant,* 80 Mich
App 219; 263 NW2d 37 (1977). Such parents might
be forever deprived of the opportunity to enjoy the
benefits of parenthood solely on the basis of a
determination which was made in haste and in the
absence of time-tempered reflection. This the Leg-
islature did not intend.

I would reverse the probate court's order insofar
as it permanently terminated appellants' parental
rights and would remand the case for further
proceedings.