IN THE MATTER OF BARBARA A ERNST

Docket No. 68562. Submitted August 8, 1983, at Detroit.—Decided November 22, 1983.

Annette Fain, the mother of Pamela Ernst Monk, petitioned in the Monroe Probate Court for an order terminating the parental rights of James Ernst and Pamela Ernst Monk in Barbara A. Ernst and placing the minor in the custody of her grandmother, Annette Fain. The probate court, James McCauley Seitz, J., granted the order. Pamela Ernst Monk appealed. *Held:*

1. Absent any demonstrable prejudice, there is no merit to the appellant's contention that the probate court erred in permitting a noncertified court reporter to tape-record the proceedings at five of the eight hearings below.

2. The initial neglect petition filed by the petitioner met the statutory requirements for such petitions and was not void on its face.

3. The probate court properly assumed jurisdiction. Even though the probate court initially stated that it had done so on the basis of the neglect of the subject child's father, rather than that of the appellant, the court's determination that appellant was unable to provide proper care, together with its finding that appellant failed to make any specific arrangements for the care of her child, support the conclusion that the court took jurisdiction of the case based upon the neglect of both parents, not just that of the father.

4. No demonstrable prejudice resulted from the court's initial failure to specify appellant's own neglect as a basis for assuming jurisdiction.

5. The proper standard to be applied in probate court termination proceedings is whether the parent has been shown by clear and convincing evidence to be unfit and unable to become fit within a reasonable period of time. The probate court's

REFERENCES FOR POINTS IN HEADNOTES
[1-9] 59 Am Jur 2d, Parent and Child §§ 39, 40, 42.
[3, 5-7] 20 Am Jur 2d, Courts § 104.
[4, 6, 8, 9] 59 Am Jur 2d, Parent and Child §§ 22-27.

decision was the proper result of applying this standard. The probate court's failure to specifically weigh the statutory "best interests" standards does not mandate reversal.

Affirmed.

J. T. KALLMAN, J., dissented. He would hold that under either a *de novo* or a clearly erroneous standard of review the matter must be reversed because the probate court improperly assumed jurisdiction over the minor child. He believed that jurisdiction over a child should only be assumed upon a showing of neglect by the custodial parent which impacts or bears on the child and that there is nothing in the record to justify the assumption of jurisdiction based on the failure of the father to provide for the child's care. He noted that the appellant has provided for and made arrangements for the care of her child and that the probate court specifically found that there was insufficient evidence to establish that appellant had neglected the child. He deemed it highly inadvisable for the Court of Appeals to look beyond what the probate judge said on the record in resolving the dispute concerning whether he took jurisdiction based on the neglect of both parents, particularly when the Court of Appeals concludes that the judge did not really mean what he said. He would disagree with the conclusion by the majority that the appellant has failed to show any "demonstrable prejudice" flowing from the court's failure to specify her neglect as a basis for the assumption of jurisdiction. He would find that prejudice is manifest for the obvious reason that the probate court was without legal authority to terminate appellant's parental rights in the absence of a finding at the jurisdictional phase of the proceedings that she had neglected her daughter's welfare. Absent such a showing, the proper forum for the appellee's action is the circuit court under the Child Custody Act, where the "best interests" of the child are the paramount concern. He believed that appellee is not entitled to custody and the complete termination of appellant's parental rights. He would reverse.

### OPINION OF THE COURT

1. PARENT AND CHILD — TERMINATION OF PARENTAL RIGHTS — RE-
CORDING OF PROCEEDINGS — APPEAL — JUVENILE COURT RULES.

Probate court proceedings at hearings regarding the termination of parental rights and the custody of a minor are to be recorded in compliance with the Juvenile Court Rule pertaining thereto; absent prejudice suffered by the complaining party attributable

to a failure to observe the rule, reversal is not appropriate (JCR 1969, 8.4).

2. PARENT AND CHILD — NEGLECT — COURTS — JURISDICTION — PLEADING.

A petition in probate court alleging neglect of a child must conform to the statutory requirements regarding a petition to acquire jurisdiction; the petition shall state the name, birth date and residence of the minor, his parents, those having custody, and the nearest relatives; there is no requirement for an initial allegation of abandonment or abuse (MCL 712A.11; MSA 27.3178[598.11]).

3. PARENT AND CHILD — NEGLECT — PROBATE COURT — JURISDICTION — APPEAL.

A probate court acts properly in taking jurisdiction in an action where child neglect is alleged where, although the court initially stated that it took jurisdiction on the basis of the neglect of the subject child's father, rather than that of the mother, the court's determination that the mother was unable to provide proper care, together with its finding that the mother failed to make any specific arrangements for the care of her child, supported the conclusion that the court took jurisdiction of the case based upon the neglect of both parents, not just the father, and where no demonstrable prejudice results from the court's initial failure to specify the mother's own neglect as a basis for assuming jurisdiction.

4. PARENT AND CHILD — TERMINATION OF PARENTAL RIGHTS — BURDEN OF PROOF.

The standard to be applied by the probate court in proceedings to terminate parental rights pursuant to the juvenile code is whether the parents have been shown by clear and convincing evidence to be unfit and unable to become fit within a reasonable period of time; the standard is not the best interest of the child standard used in circuit court child custody proceedings under the Child Custody Act (MCL 712A.19a; MSA 27.3178[598.19a]).

DISSENT BY J. T. KALLMAN, J.

5. COURTS — PROBATE COURT — JURISDICTION.

*The jurisdiction of a probate court over children is not inherent; to acquire such jurisdiction, the statutory requirements must be complied with (MCL 712A.2[b], subds [1] and [2]; MSA 27.3178[598.2][b], subds [1] and [2]; JCR 1969, 8.1[A] and [B]).*

6. Parent and Child — Probate Court — Neglect — Jurisdiction — Child Custody Act — Courts.

The jurisdiction of a probate court over a child should only be assumed upon a showing of neglect by the custodial parent which impacts or bears on the child; absent such a showing of neglect, the proper forum for a custody dispute is the circuit court under the Child Custody Act (MCL 722.21 et seq.; MSA 25.312[1] et seq.).

7. Parent and Child — Probate Court — Neglect — Termination of Parental Rights — Jurisdiction — Appeal.

A probate court is without legal authority to terminate a mother's parental rights in the absence of a finding at the jurisdictional phase of the proceedings that the mother has neglected the subject child; demonstrable prejudice flows from a probate court's assumption of jurisdiction in an action where a mother's parental rights are terminated where the probate court failed to specify the mother's neglect as a basis for the assumption of jurisdiction.

8. Parent and Child — Courts — Probate Court — Termination of Parental Rights — Juvenile Court Rules.

Probate court proceedings which involve the termination of parental rights are intended to evaluate the fitness of a parent; the termination of parental rights due to unfitness is permissible only upon a showing of clear and convincing evidence (JCR 1969, 8.3[B]).

9. Courts — Parent and Child — Child Custody Act — Circuit Courts — Best Interests of Child.

Proceedings in circuit court under the Child Custody Act are intended to resolve custody disputes with the best interests of the child as a paramount concern; parental rights are not completely terminated in a custody action brought under the act, and the noncustodial parent retains the right to visitation, to petition the court for a change of custody and to petition the court to vindicate the best interests of the child (MCL 722.21 et seq.; MSA 25.312[1] et seq.).

*Lennard & Graham* (by *W. Thomas Graham*), for Annette Fain.

*Czeryba, Dulany & Godfroy* (by *Joseph A. Costello, Jr.*), for Pamela Ernst Monk.

*James H. Davies,* guardian ad litem, for Barbara A. Ernst.

Before: BRONSON, P.J., and T. M. BURNS and J. T. KALLMAN,* JJ.

PER CURIAM. Appellant, mother of the subject minor, appeals as of right from the probate court's order terminating her parental rights and placing the minor in the custody of appellant's mother, the minor's grandmother. On appeal, she raises four issues, none of which require reversal.

First, appellant urges that the probate court erred in permitting a noncertified court reporter to tape-record the proceedings at five of the eight hearings held below. We find no merit in this contention. The proceedings were recorded in compliance with JCR 1969, 8.4. There has been no allegation of any inaccuracy in the transcripts, let alone any showing of actual prejudice which might have resulted from the use of a noncertified, as opposed to a certified, reporter. Absent any demonstrable prejudice, we find no occasion to reverse the lower court on this issue. See *Moskalik v Dunn,* 392 Mich 583, 588; 221 NW2d 313 (1974), where the Court found reversal inappropriate absent some showing that violation of a court rule may have caused prejudice.

Appellant next urges that the original neglect petition was void on its face because it indicated that the minor had been placed in the custody of a relative *(i.e.,* appellee, the minor's grandmother) rather than having been abandoned or abused. This argument overlooks the fact that a neglect petition need only conform to the requirements of MCL 712A.11; MSA 27.3178(598.11) (that the peti-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

tion show the name, birth date and residence of the minor, her parents, those having custody, and nearest relatives). This statute requires no initial allegation of abandonment or abuse. The petition filed by appellee did meet all of the requirements of the above-cited statute, setting forth the name, birth date and residence of the subject minor, the parents (to the extent that the latter's residences were known), nearest relatives, and those having custody (*i.e.*, appellee). We conclude that the initial neglect petition met the statutory requirements and hence was not void on its face.

The third argument raised by appellant presents the closest issue on appeal. Appellant urges that the probate court erroneously assumed jurisdiction, because the court initially took the case based upon the father's negligence, without determining that appellant mother had also neglected the child. In support of her argument, appellant cites cases in which a parent has arranged with a relative to place her child in the custody of that relative, *e.g., In re Weldon,* 397 Mich 225; 244 NW2d 827 (1976); *In the Matter of Curry,* 113 Mich App 821; 318 NW2d 567 (1982); *In the Matter of Ward,* 104 Mich App 354; 304 NW2d 844 (1981); *In the Matter of Taurus F,* 415 Mich 512; 330 NW2d 33 (1982). We find the foregoing cases distinguishable and believe that appellant's reliance upon them is misplaced.

In each of the foregoing cases, the parent responsible for the subject child made an affirmative arrangement to place that child in the custody of a relative, usually for a finite period of time. For example, in *Taurus F, supra,* the mother arranged to leave the child with her sister during the period of the mother's incarceration. Three justices in that case found court intervention inappropriate

given that the mother had arranged to entrust her child with the relative. The other three justices in *Taurus F, supra,* took the position that the lower court had properly taken jurisdiction because the mother had not specified the details of her arrangement to entrust the child to her sister. The crucial criterion for all of the justices was the existence of a verifiable, specific agreement to entrust the subject child to another's care. Accord, *Curry, supra,* where the mother was also incarcerated and arranged to entrust her child to its grandparents for the anticipated period of incarceration. See also *Ward, supra,* where the mother went beyond merely leaving the child in her relatives' care; in that case, the mother regularly provided support money for the child and eventually reclaimed custody of the child.

The present case is somewhat different. Although appellant did take the step of leaving the subject child with a relative (the child's grandmother, appellee), she did not make any arrangement which indicated either (1) that the grandparent's custody would be temporary, as opposed to indefinite, or (2) that appellant would take ultimate responsibility for the expenses of the child's care. More important, appellant failed to take the steps necessary to ensure that she would remain in contact with her child or with the relative to whom the child had been entrusted. Unlike the mothers in the above-cited cases, there was no effort to regularly correspond with the grandparent who was taking care of the child, let alone any arrangement to forward funds to provide for the child's care. Appellant's complete failure to remain in contact with, or accessible to, the custodial relative, presents the most significant distinction between the present case and those cited

above. Given this distinction, we cannot agree with appellant's argument that the probate court erred in taking jurisdiction of the present case in any way analogous to the probate court's error in the cases cited above.

Given the foregoing, we conclude that the probate court acted properly in taking jurisdiction of the cases, even though it initially stated that it had done so on the basis of the neglect of the subject child's father, rather than that of the appellant. The court's determination that appellant was unable to provide proper care, together with its finding that appellant failed to make any specific arrangements for the care of her child, support the conclusion that the court took jurisdiction of the case based upon the neglect of both parents, not just that of the father. In concluding our review of this issue, we note that no demonstrable prejudice resulted from the court's initial failure to specify appellant's own neglect as a basis for assuming jurisdiction.

The fourth and final argument raised by appellant is that the probate court erred in failing to consider the "best interests of the child" factors set forth at MCL 722.23; MSA 25.312(3). Although some panels of this Court have suggested that the statutory "best interest" standards must be applied in probate court termination proceedings, *In the Matter of Baby X,* 97 Mich App 111; 293 NW2d 736 (1980); *In re Franzel,* 24 Mich App 371; 180 NW2d 375 (1970), we adopt the alternative viewpoint set forth in *In the Matter of Atkins,* 112 Mich App 528, 541; 316 NW2d 477 (1982). In *Atkins,* the Court held that the "best interest" standard need not apply, but that the proper standard instead is "whether the parent has been shown by clear and convincing evidence to be unfit

and unable to become fit within a reasonable period of time", MCL 712A.19a; MSA 27.3178 (598a); *Atkins, supra,* p 541, fn 7. The probate court's decision was the proper result of applying the latter standard. Since the court based its decision upon its findings concerning appellant's fitness, as required by the foregoing statute, its failure to specifically weigh the "best interest" standards does not mandate reversal. See *Atkins, supra,* pp 541-542.

Affirmed.

J. T. KALLMAN, J. *(dissenting).* The proper standard of review by this Court in cases involving termination of parental rights is somewhat unclear. This Court has applied both a *de novo* and a clearly erroneous standard of review on appeal in termination cases. *In the Matter of Bailey,* 125 Mich App 522, 527; 336 NW2d 499 (1983). Applying either standard, however, I must dissent from the majority's resolution of the issues raised in this case.

In my opinion, this matter must be reversed because the probate court improperly assumed jurisdiction over the minor child. The jurisdiction of the probate court over children is not inherent —the statutory requirements embodied in MCL 712A.2(b), subds (1) and (2); MSA 27.3178(598.2)(b), subds (1) and (2) must be complied with. See, also, *In the Matter of Baby X,* 97 Mich App 111, 113-114; 293 NW2d 736 (1980), and JCR 1969, 8.1(A) and (B).

In this case, the girl's mother testified that Barbara's father had left her when she was pregnant and he has not been heard from since this abandonment. At the conclusion of the jurisdictional hearing, the probate judge specifically found

that there was insufficient evidence to establish
that Barbara's mother had neglected her. None-
theless, the judge assumed jurisdiction, declaring
the child neglected due to her father's failure to
pay support. The probate judge said:

> "The Court is not convinced from the evidence that
> has been presented that mother has neglected the child
> sufficiently, under Michigan law, to establish that the
> child is neglected; however, it is clear to the Court that
> the father has, and, therefore, the finding of the Court
> is that Barbara is a neglected child within the meaning
> of the Michigan Probate Code and orders that she be
> made a temporary ward of the Court, and Barbara is
> continued in the custody of her maternal grandparents,
> pending further order of the Court."

The court's decision to assume jurisdiction based
on the father's failure to pay support is erroneous
under any possible standard of review applicable
to this case. Barbara's mother, the custodial par-
ent, is not obligated to bear responsibility for the
actions of the girl's father whom she has not seen
for six years. To allow jurisdiction to attach in this
factual scenario could lead to hypothetically in-
credible results and, I believe, state interference
with the family far beyond that which was con-
templated by the Legislature. The majority opin-
ion in effect sanctions state intervention and inter-
ference with a single parent's custodial rights
based upon a lack of support from a missing or
delinquent parent.

Jurisdiction over a child should only be assumed
upon a showing of neglect by the custodial parent
which impacts or bears on the child. There is
nothing in this record to justify the assumption of
jurisdiction based upon the failure of Barbara's
father to provide support for her care. The custo-

dial parent has provided for and made arrangements for the care of her child.

Despite the probate court's explicit statement to the contrary, the majority concludes that the probate court really took jurisdiction in this case based upon the neglect of both parents. I deem it to be highly inadvisable for an appellate court to look beyond what the judge has said on the record in resolving a dispute, particularly when that appellate court concludes that the judge did not really mean what he said. I am particularly struck by the majority's conclusion that the child's mother has failed to show any "demonstrable prejudice" flowing from the court's failure to specify her neglect as a basis for the assumption of jurisdiction. I find this to be an amazing assertion. Prejudice is manifest for the obvious reasons that the probate court was without legal authority to terminate the mother's parental rights in the absence of a finding at the jurisdictional phase of the proceedings that she had neglected her daughter's welfare.

Absent this showing of neglect by the custodial mother, the proper forum for the petitioner-grandparent's action was the circuit court under the Child Custody Act, MCL 722.21 *et seq.;* MSA 25.312(1) *et seq.* Compare, *Deel v Deel,* 113 Mich App 556; 317 NW2d 685 (1982). See, also, *In re Weldon,* 397 Mich 225; 244 NW2d 827 (1976). Basically, the grandparent desired to formalize and stabilize the arrangement made with her daughter concerning the custody of Barbara.

Probate court proceedings which involve the termination of parental rights are intended to evaluate the fitness of a parent. The termination of parental rights due to unfitness is permissible only upon a showing of clear and convincing evi-

dence. JCR 1969, 8.3(B). *In the Matter of LaFlure,*
48 Mich App 377, 386; 210 NW2d 482 (1973), *lv
den* 390 Mich 814 (1973). Proceedings in circuit
court under the Child Custody Act are intended to
resolve custody disputes with the "best interest" of
the child as the paramount concern. The proceed-
ings in probate and circuit court are distinguisha-
ble in nature, scope and evidentiary standards.
Barbara's mother should not have to bear the
socially stigmatizing lable of "unfit parent" on the
record in this case. Unlike a probate court's deci-
sion that parental rights should be terminated, a
determination made in the "best interest" of the
child by the circuit court under the Child Custody
Act does not carry the same blot on the parent's
good reputation. Moreover, parental rights are not
completely terminated in a custody action brought
under the Child Custody Act, and the non-custo-
dial parent retains the right to visitation, to peti-
tion the court for a change of custody and to
petition the court to vindicate the best interests of
the child.

Barbara's grandmother may be correct in believ-
ing that she should be awarded her custody (an
issue on which I reach no conclusion). Clearly,
however, on this record, Barbara's grandmother is
not entitled to custody *and* the complete termina-
tion of her natural mother's rights.

I would reverse, and I urge the appellant mother
to seek leave to appeal to the Michigan Supreme
Court.