### IN THE MATTER OF BABY X

Docket No. 46543. Submitted January 17, 1980, at Detroit.—Decided April 23, 1980.

Baby X, within 24 hours of birth, began exhibiting symptoms of drug withdrawal. The Department of Social Services petitioned the Oakland County Probate Court to assert jurisdiction over the child because of the mother's neglect. The probate court found sufficient evidence of neglect to take temporary custody of the child, and that decision was upheld on appeal to the Oakland Circuit Court, John N. O'Brien, J. The child's mother appeals by leave granted, alleging that her conduct, specifically her ingestion of narcotics prior to the birth of the child, cannot constitute neglect or abuse under the Probate Code and that the probate court wrongfully asserted jurisdiction and that the probate court wrongfully ruled that hospital records for both her and the child were admissible into evidence despite a Federal law requiring confidentiality of records of drug abuse treatment patients. *Held:*

1. Prenatal conduct can be considered probative by a parent of a child's neglect. A newborn suffering narcotics withdrawal symptoms as a consequence of prenatal maternal drug addiction may properly be considered a neglected child within the jurisdiction of the probate court. The probate court, therefore, properly asserted jurisdiction.

2. State law requires certain professionals to report any suspected child abuse. On the other hand, Federal law states that all patient records maintained in connection with drug abuse programs may not be disclosed absent good cause and a

REFERENCES FOR POINTS IN HEADNOTES
[1] 42 Am Jur 2d, Infants §§ 22, 43, 55.
  59 Am Jur 2d, Parent and Child §§ 39, 40.
[2] 20 Am Jur 2d, Courts § 104.
  42 Am Jur 2d, Infants § 2.
[3] 42 Am Jur 2d, Infants §§ 2, 16.
[4] 42 Am Jur 2d, Infants §§ 16, 55.
  Liability for prenatal injuries. 40 ALR3d 1222.
[5] 42 Am Jur 2d, Infants § 16.
  66 Am Jur 2d, Records and Recording Laws § 27 *et seq.*

court order. However, in neglect proceedings, confidentiality must give way to the best interests of the child and a court may authorize disclosure where drug treatment records are found to be necessary and material to the state's proof of neglect. Although this disclosure normally requires a proper court order, in this case it is not necessary to reverse because of the probate court's failure to issue such an order because the probate judge competently balanced all considerations in reaching the decision allowing introduction of the records.

Affirmed.

1. INFANTS — PROBATE COURT — JURISDICTION — CHILD NEGLECT — STATUTES.

A probate court acting pursuant to a statute which confers probate jurisdiction over a child where there are allegations of neglect must first determine whether the facts alleged are sufficient for the court to assert its jurisdiction and, if so, the court should order disposition according to the best interests of the child after considering all the facts and alternatives (MCL 712A.2; MSA 27.3178[598.2]).

2. INFANTS — PROBATE COURT — JURISDICTION — UNBORN CHILD — STATUTES.

A probate court may not assert jurisdiction over an unborn person as it is not a "child" under the statute conferring jurisdiction over children (MCL 712A.2; MSA 27.3178[598.2]).

3. INFANTS — UNBORN CHILD — BEST INTERESTS OF CHILD — PARENT'S PRENATAL CONDUCT.

The limited recognition of a child *en ventre sa mere* as a child *in esse* is appropriate where it is for the child's best interest and, because a child has a legal right to begin life with a sound mind and body, it is within the child's best interest to examine any prenatal conduct of the parent which bears upon that right.

4. INFANTS — CHILD NEGLECT — NARCOTICS ADDICTION — PROBATE COURT.

A newborn infant suffering narcotics withdrawal symptoms as a consequence of prenatal maternal drug addiction may properly be considered a neglected child for purposes of the jurisdiction of the probate court.

5. RECORDS — NARCOTICS TREATMENT — CHILD NEGLECT — CONFIDENTIALITY OF RECORDS.

The statutory confidentiality of narcotics treatment records of a mother is subordinate to the best interests of a child in a

proceeding based on allegations of child neglect; disclosure may be authorized where the treatment records are found to be necessary and material to the state's proof of neglect.

*Evelyn F. Forrest,* for appellant.

*L. Brooks Patterson,* Prosecuting Attorney, *Robert C. Williams,* Chief Appellate Counsel, and *Jerome Sabbota,* Assistant Prosecuting Attorney, for appellee.

*Cooper, Shipman & Gabe,* guardian ad litem for Baby X.

Before: M. J. KELLY, P.J., and BRONSON and D. C. RILEY, JJ.

D. C. RILEY, J. On March 30, 1977, the minor child who is the subject of this lawsuit was born in St. Joseph's Hospital of Pontiac, Michigan. Within 24 hours of birth this child, known as Baby X for purposes of these proceedings, began exhibiting symptoms of drug withdrawal, whereupon a petition was filed with the Oakland County Probate Court alleging that appellant, Mother X, had so neglected her child that the court should assert jurisdiction. The probate judge found sufficient evidence of neglect to take temporary custody of Baby X, a decision affirmed by the Oakland County Circuit Court and now appealed by the child's mother.

The Probate Code provides as follows:

"Sec. 2. Except as provided herein, the juvenile division of the probate court shall have:

\* \* \*

"(b) Jurisdiction in proceedings concerning any child under 17 years of age found within the county

"(1) Whose parent or other person legally responsible

for the care and maintenance of such child, when able to do so, neglects or refuses to provide proper or necessary support, education as required by law, medical, surgical or other care necessary for his health, morals, or who is deprived of emotional well-being, or who is abandoned by his parents, guardian or other custodian, or who is otherwise without proper custody or guardianship; or

"(2) Whose home or environment, by reason of neglect, cruelty, drunkenness, criminality or depravity on the part of a parent, guardian or other custodian, is an unfit place for such child to live in, or whose mother is unmarried and without adequate provision for care and support." MCL 712A.2; MSA 27.3178(598.2).

A probate court acting pursuant to this statute must make two determinations. At the *adjudicative* stage, the court should initially consider whether sufficient facts have been alleged to support assertion of jurisdiction. If sufficient jurisdictional facts exist, for instance, if the facts establish neglect, the court can proceed to the *dispositional* stage. After considering all the facts and alternatives, the judge should order disposition according to the best interests of the child. See *In the Matter of Rebecca Oakes,* 53 Mich App 629; 220 NW2d 188 (1974), *People v Brown,* 49 Mich App 358; 212 NW2d 55 (1973), *In re Franzel,* 24 Mich App 371; 180 NW2d 375 (1970).

In the instant case, it is the adjudicative stage that is currently at issue. Mother X contends that prenatal conduct cannot constitute neglect or abuse under the Probate Code; therefore, the probate court wrongly asserted jurisdiction.

It recently has been held that the probate court may not assert jurisdiction over an unborn person as it is not a "child" under MCL 712A.2; MSA 27.3178(598.2). *In re Dittrick Infant,* 80 Mich App 219, 223; 263 NW2d 37 (1977). However, since

Baby X was born before the instant petition was filed by the Department of Social Services, this aspect of jurisdiction is not properly at issue. The prenatal; period is only pertinent because it is the sole asserted basis for establishing jurisdiction based on neglect. The initial question then becomes whether a mother's prenatal behavior is relevant to a determination of a living child's neglect.

While there is no wholesale recognition of fetuses as persons, *Roe v Wade,* 410 US 113, 162; 93 S Ct 705; 35 L Ed 2d 147 (1973), *Toth v Goree,* 65 Mich App 296, 303; 237 NW2d 297 (1975), fetuses have been accorded rights under certain limited circumstances. *O'Neill v Morse,* 385 Mich 130; 188 NW2d 785 (1971) (wrongful death action allowable for 8-month-old viable fetus), *Womack v Buchhorn,* 384 Mich 718; 187 NW2d 218 (1971) (common law action allowable for surviving child injured during the fourth month of pregnancy), *LaBlue v Specker,* 358 Mich 558; 100 NW2d 445 (1960) (dramshop action allowable for fetus of dead father). This limited recognition of a child *en ventre sa mere* as a child *in esse* is appropriate when it is for the child's best interest. *LaBlue, supra,* 563. Since a child has a legal right to begin life with a sound mind and body, *Womack, supra,* 725, we believe it is within his best interest to examine all prenatal conduct bearing on that right.

It must then be determined whether prenatal conduct—specifically, extensive narcotics ingestion by the mother—can constitute neglect sufficient for the probate court's assertion of jurisdiction.

Under the Probate Code, a permanent custody order must be based on circumstances which "establish or seriously threaten neglect of the child for the long-run future". The quantum of neglect

sufficient for temporary custody or merely establishing jurisdiction implicitly must be less, *i.e.,* temporary neglect. See *Fritts v Krugh,* 354 Mich 97, 113-114; 92 NW2d 604 (1958).

In *Dittrick, supra,* this Court recognized that mistreatment of a child is probative of how a parent may treat other soon-to-be-born siblings. It may readily be inferred, then, that such abuse is sufficient to establish jurisdiction. See also, *In the Matter of LaFlure,* 48 Mich App 377, 392; 210 NW2d 482 (1973).

Since prior treatment of one child can support neglect allegations regarding another child, we believe that prenatal treatment can be considered probative of a child's neglect as well. We hold that a newborn suffering narcotics withdrawal symptoms as a consequence of prenatal maternal drug addiction may properly be considered a neglected child within the jurisdiction of the probate court. We pass no judgment upon whether such conduct will suffice to permanently deprive a mother of custody. Such custody determinations will be resolved at the dispositional phase where prenatal conduct will be considered along with postnatal conduct.

In addition to the jurisdictional matter, Mother X asserts that her right to confidentiality as a drug abuse patient was impaired by the lower court. Specifically, she contends that a conflict exists between Federal law which protects patients from disclosure of their drug addiction records and state law which mandates disclosure of child abuse and neglect. The probate court rejected Mother X's objections and ruled that hospital records for both her and Baby X were admissible. Although the circuit court did not deal with this issue, we believe that it is of such importance that it must

be addressed here. See *Clark v Dalman,* 379 Mich 251; 150 NW2d 755 (1967).

MCL 722.623; MSA 25.248(3)[1] provides that certain professionals should report any suspected child abuse to the proper authorities, supplying such information as the child's name, parents' names and a description of the abuse. No privilege (except for that between attorney and client) can constitute grounds for excusing such a report or for excluding evidence in a protective juvenile proceeding. MCL 722.631; MSA 25.248(11).[2]

These statutes favoring disclosure are diametrically opposed to drug treatment statutes protective of confidentiality. 21 USC 1175[3] states that all

---

[1] "Sec. 3. (1) A physician, coroner, dentist, medical examiner, nurse, audiologist, certified social worker, social worker, social work technician, school administrator, school counselor or teacher, law enforcement officer, or duly regulated child care provider who has reasonable cause to suspect child abuse or neglect immediately, by telephone or otherwise, shall make an oral report, or cause an oral report to be made, of the suspected child abuse or neglect to the department. Within 72 hours the reporting person shall file a written report as required in this act. If the reporting person is a member of a hospital, agency, or school staff, the reporting person shall notify the person in charge thereof of his or her finding, that the report has been made, and make a copy of the written report available to the person in charge. One report from a hospital, agency, or school shall be considered adequate to meet the reporting requirement.

"(2) The written report shall contain the name of the child and a description of the abuse or neglect. If possible, the report shall contain the names and addresses of the child's parents, the child's guardian, or the persons with whom the child resides, and the child's age. The report shall contain other information available to the reporting person which might establish the cause of abuse or neglect and the manner in which it occurred." MCL 722.623; MSA 25.248(3).

[2] "Sec. 11. Any legally recognized privileged communication except that between attorney and client is abrogated and shall neither constitute grounds for excusing a report otherwise required to be made nor for excluding evidence in a civil child protective proceeding resulting from a report made pursuant to this act." MCL 722.631; MSA 25.248(11).

[3] "(a)Disclosure authorization" Records of the identity, diagnosis, prognosis, or treatment of any patient which are maintained in connection with the performance of any drug abuse prevention function conducted, regulated, or directly or indirectly assisted by any department or agency of the United States shall, except as provided

patient records, which are maintained in connection with drug abuse programs supported by the Federal government, may not be disclosed absent "good cause" and a court order. Interpretative regulations promulgated by the Department of Health, Education and Welfare have extended this confidentiality to information that is in any way related to the diagnosis and treatment of drug abuse. 42 CFR § 2.13 (1979). Thus, the release of the hospital's report and records concerning Baby X's withdrawal symptoms and the information regarding Mother X's drug abuse was allegedly in contravention of the Federal statute as well as possibly a state statute, MCL 325.728; MSA 18.1031(28).[4]

---

in subsection (e) of this section, be confidential and be disclosed only for the purposes and under the circumstances expressly authorized under subsection (b) of this section.

"(b) Purposes and circumstances of disclosure affecting consenting patient and patient regardless of consent

"(1) The content of any record referred to in subsection (a) of this section may be disclosed in accordance with the prior written consent of the patient with respect to whom such record is maintained, but only to such extent, under such circumstances, and for such purposes as may be allowed under regulations prescribed pursuant to subsection (g) of this section.

"(2) Whether or not the patient, with respect to whom any given record referred to in subsection (a) of this section is maintained, gives his written consent, the content of such record may be disclosed as follows:

"(A) To medical personnel to the extent necessary to meet a bonafide medical emergency.

"(B) To qualified personnel for the purpose of conducting scientific research, management audits, financial audits, or program evaluation, but such personnel may not identify, directly or indirectly, any individual patient in any report of such research, audit, or evaluation, or otherwise disclose patient identities in any manner

"(C) If authorized by an appropriate order of a court of competent jurisdiction granted after application showing good cause therefor. In assessing good cause the court shall weigh the public interest and the need for disclosure against the injury to the patient, to the physician-patient relationship, and to the treatment services. Upon the granting of such order, the court, in determining the extent to which any disclosure of all or any part of any record is necessary, shall impose appropriate safeguards against unauthorized disclosure." 21 USC 1175.

Two New York courts have dealt with a similar conflict between the Federal and state law. *In the Matter of Dwayne G,* 97 Misc 2d 333; 411 NYS2d 180 (Fam Ct, 1978), *In the Matter of the Doe Children,* 93 Misc 2d 479; 402 NYS2d 958 (Fam Ct, 1978). In both neglect-proceeding cases, the Social Services Commissioner moved for the production of records on the mothers' drug or alcohol abuse. Production was opposed based on 21 USC 1175(a). In both cases, the family courts held that the records should be produced pursuant to orders issued under 21 USC 1175(b)(2)(C).

We quote *Doe, supra,* 959-960.

"As stated in this section [21 U.S.C. § 1175(b)(2)(C)], it is the duty of the court to weigh the public interest and the need for disclosure against the injury to the patient. In assessing the public interest, the court must consider

---

[4] "Sec. 18. (1) Records of the identity, diagnosis, prognosis, or treatment of any individual which are maintained in connection with the performance of any licensed substance abuse treatment-rehabilitation or prevention service authorized or assisted under this act are confidential and may be disclosed only for the purposes and under the circumstances expressly authorized under this section.

"(2) If the individual with respect to whom any given record referred to in this section is maintained, gives his written consent, the content of the record may be disclosed to medical personnel for the purpose of diagnosis or treatment of the person, or to governmental personnel for the purpose of obtaining benefits to which the person is entitled, * * *

"(3) If the person with respect to whom any given record referred to in this section is maintained, does not give his written consent, the content of the record may only be disclosed as follows:

"(a) To medical personnel to the extent necessary to meet bona fide medical emergency.

"(b) To qualified personnel for the purpose of conducting scientific statistical research, financial audits, or program evaluation, but the personnel shall not identify, directly or indirectly, any individual person in any report of the research audit, or evaluation or otherwise disclose identities in any manner.

"(c) Upon application, a court of proper jurisdiction may order the disclosure of whether a specific person is in treatment with an agency. In all other respects the confidentiality shall be the same as the physician-patient relationship as provided by law." MCL 325.728; MSA 18.1031(28). (This statute was repealed in 1978.)

the safety and welfare of the three children who are alleged to be neglected. The purpose of the child protective proceeding, is 'to help protect children from injury or mistreatment and to help safeguard their physical, mental and emotional well-being.' Family Court Act Section 1011. This Court is of the opinion that the interest of these young children in living in secure surroundings outweighs any possible injury to the patient, or to the physician-patient relationship. The private nature of a Family Court proceeding, and the fact that 'the records of any proceeding in the family court shall not be open to indiscriminate public inspection' (Family Court Act section 166) minimizes the likelihood of the respondent's status becoming a matter of public record. Thus, this Court finds that there is good cause for disclosure of the requested records, as required by 21 U.S.C. § 1175."

We too agree that in neglect proceedings confidentiality must give way to the best interests of the child. Where treatment records are found to be "necessary and material", *Dwayne G, supra,* 183, to the state's proof of neglect, a court of competent jurisdiction may authorize disclosure. Alleged drug or alcohol dependence (here, the alleged heroin addiction of Mother X) which causes a baby's withdrawal and failure to thrive is sufficient "good cause" as required by the Federal statute (and sufficient under the state statute as well) to order production of the records.

While normally, in the absence of this necessary court order, we would be compelled to reverse, we need not do so here. The probate judge conducted a substantial inquiry into the competing concerns and policies inherent in the case *sub judice.* He first sought to protect the mother's own confidentiality needs by appointing a separate guardian ad litem for Baby X and then ultimately limited the records to be produced to "objective data" only.

Throughout the proceedings, the court complied with the spirit of the Federal statute that the court weigh "the public interest and the need for disclosure against the injury to the patient, to the physician-patient relationship, and to the treatment services". 21 USC 1175(b)(2)(C). In ultimately concluding that the child's best interests must preponderate over the mother's, the judge below did everything but issue the proper court order. In light of his competent balancing, his carefully restrictive admissions and the limited, private nature of the child neglect proceedings, we see no reason to reverse here based on the lack of a proper court order. In future neglect cases, however, any conflict between Federal and state law can be avoided by filing a John or Jane Doe petition with the disclosure of any names and confidential information to follow the issuance of a court order upon "good cause".

Affirmed.