**In the Matter of the INVOLUNTARY TERMINATION OF THE PARENT CHILD RELATIONSHIP OF A.H., L.H., C.H., and J.H., Minor Children and Their Mother Annette Johnston and Their Father, Jay Haney,**

**Jay Haney, Appellant–Respondent,**

v.

**Adams County Office of Family and Children, Appellee–Petitioner.**

No. 01A05–0501–JV–33.

Court of Appeals of Indiana.

Aug. 10, 2005.

Katherine A. Cornelius, Indianapolis, for Appellant.

M. Bruce Scott, Tourkow, Crell, Rosenblatt & Johnson, Fort Wayne, for Appellee.

## OPINION

BAKER, Judge.

Appellant-respondent Jay Haney appeals from the trial court's order terminating his parental rights as to his minor children, AH, LH, CH, and JH. Specifically, Haney contends that the trial court erroneously admitted a psychiatric evaluation into evidence regarding Haney's eligibility for social security disability, and that the appellee-petitioner Adams County Office of Family and Children (OFC) failed to establish that his parenting contributed to his children's problems or prohibited reunification with him. Concluding that the admission into evidence of the psychological evaluation did not amount to reversible error, and that the evidence was sufficient to support the order terminating Haney's parental rights over his children, we affirm the judgment of the trial court.

## FACTS

Haney and Annette Johnston[1] were married and had four children. When the termination proceedings commenced in 2001, JH and CH—who are twins—were seven years old, AH was five, and LH was three. On April 13, 2001, all four of the children were detained by the OFC after receiving a complaint that Johnston was failing to supervise the children. During this time, Haney was in prison, serving an eighteen-month sentence for forgery.

When the children were removed, it was determined that there was an open investigation in another county regarding the family. In particular, the Wells County OFC had been involved with the family from August 1997 through December 1999. That office had received reports regarding disciplinary problems and lack of supervision over the children. Also, the children had been removed from the home after a report that one of them had set a fire in the residence.

The children were returned to Johnston several days later, but she ultimately left the two oldest children at the OFC, claiming that she could not "handle them." Tr. p. 781. This occurred three days before Haney was to be released from prison. As a result of Johnston's actions, the oldest boys were placed in licensed foster care,

---

1. At some point, Haney and Johnston were married to each other. However, during the pendency of these proceedings, the marriage was dissolved.

where they continue to reside. All four of the children were adjudged to be Children In Need of Services (CHINS) on December 21, 2001.

The trial court entered a dispositional decree on September 9, 2002, whereupon both Johnston and Haney were ordered to participate in various services and counseling programs offered by the OFC. On May 27, 2003, the two youngest children—who were still in Johnston's custody—were detained by the OFC as a result of Johnston's physical abuse of AH. Johnston ultimately pleaded guilty to battery for this offense. Both AH and LH were then placed in foster care with the other children.

It was revealed that Haney had attempted to undergo some counseling while in prison, but he could not continue in light of anger control issues. Haney had been diagnosed with a number of mental health problems, including intermittent explosive disorder, anti-social personality disorder and avoidant personality disorder. During the pendency of the CHINS proceeding, Haney displayed a complete lack of ability to control his anger during court proceedings and visitations with his children. Haney also became combative and angry with the service providers. It was also determined that even though Haney had the opportunity to obtain adequate housing for the children, he failed to do so. Between the period of time that Haney was released from prison and the time of the termination hearing, he had occupied at least five different residences spanning two different counties.

On June 30, 2003, the OFC petitioned for the termination of parental rights with respect to Haney and Johnston and their four children. At the termination hearing, it was revealed that three of the four children were in special education classes at Monmouth Elementary School. The children's special education teacher, Claudia Klingaman, testified at length as to the twins' complete lack of educational and social skills. However, after the older boys had been removed from Johnston's home and placed in foster care, it was determined that every aspect of their intellectual development had improved.

A Guardian Ad Litem (GAL) was also involved in the case, and she issued the following report regarding Haney's behavior:

> I also believe that Jay Haney truly believes that he can control his anger and his reactions to his children. He believes that he can provide what is necessary to adequately parent his children. I disagree with the assessment. Because of his disorders, he will not be able to adequately and safely parent his children. He does not have the ability to benefit from services. He cannot control his behavior well enough to be able to parent very provocative, special needs children. Again, his disorders allow him to believe that he can do what is necessary for his children, when this is not the case.

Appellant's App. p. 367. The GAL also issued a report detailing the condition of the children at the times of their various detentions as well as the improvements made while outside the care of either parent. An OFC case manager testified that it was the agency's plan to have the children adopted, and he detailed the particular steps that would be taken to locate, investigate, and place the children in an appropriate adoptive home.

Also at the final hearing, Dee McClurg, a licensed social worker from Park Center, testified about the mental health counseling services that were offered to Haney. McClurg had prepared a psychiatric evaluation of Haney in November 1999, for the purpose of securing social security disabili-

ty benefits for him. The report detailed Haney's various mental disorders that had been diagnosed, and it included a prognosis that was "guarded due to oppositional and noncompliant attitude and behaviors." OFC Ex. 2. Haney's counsel objected and asserted that the report was inadmissible because Haney had not signed a release of the information contained in the report. Over Haney's objection that he had not waived his right to privacy, the trial court admitted the report into evidence. McClurg went on to testify that Haney failed to keep his appointments, did not comply with the various treatment directives, and did not take his medications.

Dr. Anthony Flores, a psychologist who evaluated Haney in September 2002, testified that Haney engaged in threats and intimidation to get his way. Dr. Flores also noted that Haney has a history of drug and alcohol abuse, and that he lacked parenting skills. He further observed that Haney would often express intense unwarranted anger over inconsequential situations. On one occasion, Haney threatened to bomb the OFC, and he threatened the life of one of the case managers. Dr. Flores acknowledged that it would be difficult for anyone with Haney's symptoms and disorders to parent normal children, "not to mention children with special needs." Appellant's App. p. 25.

When CH and JH were first placed in foster care, their behavior was described as radical. They exhibited poor personal hygiene and were unable to concentrate at school because they were not sure about what was going to happen to their parents. When AH arrived in foster care, he hit himself, would cause trouble at school by starting fights, screaming at the teachers, and not following the rules.

The evidence further showed that both Johnston and Haney missed visitation appointments with the children. However, it was determined that when visitation did occur, the children were angry, hyper and unruly. On the other hand, all of the children showed significant improvement in both social and academic areas after they had been placed in foster care.

On November 15, 2004, Haney's parental rights were terminated, and he now appeals.[2]

### DISCUSSION AND DECISION

### I. Admission of Psychiatric Report

■ Haney first contends that it was error to admit the psychiatric report McClurg had prepared along with his testimony that pertained to that evaluation. Specifically, Haney argues that the admission of the report and McClurg's testimony was error because he did not sign a release for the admission of the report and, therefore, his right of privacy was violated pursuant to the 1996 Health Insurance Portability and Accountability Act (HIPAA).

■ In resolving this issue, we first note that the admission of evidence is left to the sound discretion of the trial court, and we will not reverse that decision except for an abuse of that discretion. *Mann v. Russell's Trailer Repair, Inc.,* 787 N.E.2d 922, 926 (Ind.Ct.App.2003), *trans. denied.* An abuse of discretion occurs when the trial court's decision is against the logic and effect of the facts and circumstances before it.

HIPAA protects individuals from unwarranted dissemination of medical and mental health records without consent. Pub. Law No. 104–191 (1996). The statute restricts access to medical records without the individual's direct consent. However,

---

**2.** Johnston is not a party to this appeal.

exceptions do exist, which include the reporting of child abuse. 42 CFR § 160.203(c); 42 CFR § 164.512(2)(c). Additionally, it is apparent that the provisions of HIPAA override or preempt State laws. 42 CFR § 160.203.

As noted above, McClurg's testimony related to an evaluation through which Haney obtained a disability determination. Inasmuch as there is no specific provision in HIPAA that permits the disclosure of such records for the purpose of terminating parent-child relationships, Haney urges that the trial court erroneously admitted this document and testimony at the final hearing.

In addressing Haney's contentions, we note that in apparent response to the HIPAA legislation, our General Assembly enacted a number of provisions in an effort to bring this State into compliance with that Act. For instance, one who seeks the mental health records of another must petition for the records, and the patient must be provided with a notice of hearing pertaining to that request. Ind.Code § 16–39–3–3, –4. When the OFC is involved, the information may be obtained in an emergency, and a notice of hearing is required. I.C. § 16–39–3–8. The trial court must also find by a preponderance of the evidence that other reasonable methods of obtaining the information sought are not available or would not be effective and the need for disclosure in the best interest of the child outweighs the potential harm to the patient caused by necessary disclosure. *Id.*

While we have found no case addressing the issue of whether a trial court has erred in addressing the HIPAA provisions that concern mental health records with respect to termination of parental rights cases, we find *Doe v. Daviess County Div. of Children and Family Serv.,* 669 N.E.2d 192, 195 (Ind.Ct.App.1996), *trans. denied.,* instructive in this case. In *Doe,* we were confronted with the issue of whether the trial court erred in admitting medical records, exhibits, and testimony of health care providers regarding the appellant's alcohol and drug treatment. We cited to 42 U.S.C. § 290dd–3(b)(2)(C), which provides that the content of the medical records may be disclosed whether or not the patient has given his consent:

[I]f authorized by an appropriate order of a court of competent jurisdiction granted after application showing good cause therefore. In assessing good cause the court shall weigh the public interest and the need for disclosure against the injury to the patient, to the physician-patient relationship, and to the treatment services. Upon the granting of such order, the court, in determining the extent to which any disclosure of all or any part of any record is necessary, shall impose appropriate safeguards against unauthorized disclosure.

In construing the above, we determined that the mother's right to the nondisclosure of the records relating to her alcoholism, as well as the testimony of her counselor, had to give way to the court's duty to prevent harm and to safeguard the physical, mental, and emotional well-being of the child. *Id.* at 195. We acknowledged the holding in *Matter of Baby X,* 97 Mich.App. 111, 293 N.W.2d 736 (1980), wherein it was determined that the mother's right to confidentiality as a drug abuse patient, guaranteed under both federal and state law, had to yield to the best interests of the child. Therefore, when the mother's drug treatment records were necessary and material to the State's proof of neglect, the State has shown good cause sufficient to permit a court of competent jurisdiction to authorize the disclosure of the mother's drug abuse treatment records. *Id.* at 741. In the end, we decided in *Doe*

that the "trial court respected and employed adequate safeguards to protect Mother's confidentiality. Any technical noncompliance with the federal regulations governing the disclosure of these records is harmless." *Id.* at 196.

Similarly, in *Carter v. Knox County Office of Family and Children,* 761 N.E.2d 431 (Ind.Ct.App.2001), we recognized that 42 U.S.C. § 290dd–3(b)(2)(C) permitted disclosure of medical records without the patient's consent if authorized by a court of competent jurisdiction. We noted that the trial court did not follow the statutory procedures set forth under federal law, but we nonetheless reasoned that

> although the trial court did not follow the procedures for disclosure under Title 42, the court's need to serve the interests of the child with regard to the child's relationship to its parents clearly outweighed any confidentiality to which the mother may have been entitled, particularly where the whole process was part of the effort to bring her to a place where she could retain her relationship to her child. *See, e.g., Doe,* 669 N.E.2d at 195 (holding that in parental termination proceedings, the mother's right to nondisclosure of the records relating to her alcoholism and drug use, as well as the testimony of her health-care provider, must give way before the duty of the court to prevent harm and to safeguard the physical, mental, and emotional well-being of the child). Accordingly, Mother's rights were not violated under 42 U.S.C.A § 290dd–2(b)(2)(C), as Mother's protected interests in her medical records must give way to the best interests of D.C. in the termination proceeding. *See id.* We hold that any technical noncompliance with the federal regulations governing the disclosure of these rec-

ords is harmless. *See, e.g., id.* at 196. Therefore, we find no error.

*Id.* at 438–39.

In our view, the rationales advanced in *Doe* and *Carter* control the outcome here. That is, even though the trial court may not have followed the precise procedures set forth in Title 42 regarding the admissibility of Haney's medical records, we find that the interests of Haney's children outweighed the confidentiality to which Haney might have been entitled with regard to the psychological evaluation. Indeed, such a rule safeguards the children's physical, mental and emotional well-being. That said, we conclude that the trial court's noncompliance with the federal regulations governing the disclosure of Haney's records was harmless in this instance. Hence, Haney does not prevail on this issue.

As an aside, even if we were to conclude that the psychological evaluation was erroneously admitted, the remaining evidence presented at the termination hearing, as discussed below, was more than sufficient to support the termination of Haney's parental rights. Hence, Haney is not entitled to a reversal of the termination order for this reason as well. *See Stephenson v. State,* 742 N.E.2d 463, 481 (Ind.2001) (observing that any error caused by the admission of evidence is harmless error for which we will not reverse a judgment if the erroneously admitted evidence was cumulative of other evidence appropriately admitted).

## II. Sufficiency of the Evidence

Haney next argues that the OFC failed to establish that his "parenting either contributed to the children's problems or prohibited reunification with him." Appellant's Br. p. 1. In essence, Haney is arguing that the evidence presented by the OFC was insufficient to support the ter-

mination of his parental rights as to his children.

We first note that this court will not set aside a trial court's order to terminate parental rights unless it is clearly erroneous. *In re A.A.C.*, 682 N.E.2d 542, 544 (Ind.Ct.App.1997) (citing *Egly v. Blackford County DPW*, 592 N.E.2d 1232, 1234–35 (Ind.1992)). In determining whether the evidence is sufficient to support the judgment of termination, we neither reweigh the evidence nor judge the credibility of witnesses. *Id.* We consider only the evidence that supports the judgment and the reasonable inferences to be drawn therefrom. *Id.*

For an involuntary termination of parental rights, the OFC must establish by clear and convincing evidence that:

(A) one (1) of the following exists:

(i) the child has been removed from the parent for at least six (6) months under a dispositional decree; . . .

(B) there is a reasonable probability that:

(i) the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied; or

(ii) the continuation of the parent-child relationship poses a threat to the well-being of the child;

(C) termination is in the best interests of the child; and

(D) there is a satisfactory plan for the care and treatment of the child.

Ind.Code § 31–35–2–4.

In interpreting this statute, this court has held that the trial court should judge a parent's fitness to care for his or her child as of the time of the termination hearing, taking into consideration evidence of changed conditions. *J.K.C. v. Fountain County Dep't of Pub. Welfare*, 470 N.E.2d 88, 92 (Ind.Ct.App.1984). However, recognizing the permanent effect of termination, the trial court must also evaluate the parent's habitual patterns of conduct to determine whether there is a substantial probability of future neglect or deprivation of the child. *Id.* To be sure, the trial court need not wait until the child is irreversibly influenced by a deficient lifestyle such that the child's physical, mental and social growth is permanently impaired before terminating the parent-child relationship. *Id.* at 93.

A pattern of unwillingness to deal with parenting problems and to cooperate with those providing social services, in conjunction with unchanged conditions, will support a finding that there exists no reasonable probability that the conditions will change. *Matter of D.B.*, 561 N.E.2d 844, 848 (Ind.Ct.App.1990). Where there are only temporary improvements and the pattern of conduct shows no overall progress, the court might reasonably find that under the circumstances, the problematic situation will not improve. *Matter of D.L.W.*, 485 N.E.2d 139, 143 (Ind.Ct.App. 1985). Put another way, the historic inability to provide adequate housing, stability, and supervision, coupled with the current inability to provide the same, will support a finding that continuation of the parent-child relationship is contrary to the child's best interests. *Carrera v. Allen County Office of Family and Children*, 758 N.E.2d 592, 594 (Ind.Ct.App.2001). Moreover, when the evidence shows that the child's emotional and physical development is threatened, termination of the parent-child relationship is appropriate. *Egly*, 592 N.E.2d at 1234.

In this case, a number of witnesses testified that Haney suffers from a variety of mental health disorders that impair his ability to adequately parent even normally developed children. The psychological re-

port that was admitted into evidence at the final hearing supports that testimony. OFC Ex. at 21–28, 820. It was also established that Haney exhibited threatening and violent behavior to himself and others over a long period of time. Tr. p. 471, 500–01, 667, 697.

While Haney was ordered to participate in a variety of parenting programs and services through the OFC, he failed to complete them. Tr. p. 695. The foster care providers detailed the behavioral problems they experienced during Haney's visitation with the children, as well as the manner in which the children behaved when Haney failed to appear for scheduled visits. Tr. p. 321–28, 359–63. In essence, Haney's mental health impairment together with his habitual pattern of conduct clearly demonstrates that it is in the children's best interests that Haney's parental rights be terminated. The evidence also established that Haney was unable to maintain a stable and suitable living environment for the children. Moreover, the record is replete with evidence that Haney poses a threat to the well-being of his children. Finally, the evidence showed that the children have thrived since their placement in foster care and that the OFC had developed a plan for the adoption of the children. Tr. p. 319–21, 353–68, 618–22, 686–88, 691, 704.

In sum, we conclude that the elements of the termination statute were satisfied, and the evidence was sufficient to support the termination of Haney's parental rights over his children.

The judgment of the trial court is affirmed.

RILEY, J., and MATHIAS, J., concur.

