*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

*In re* L. D. RIPPY, Minor.

FOR PUBLICATION
November 14, 2019

No. 347809
Wayne Circuit Court
Family Division
LC No.  LC No.18-001527-NA

Before:  O'BRIEN, P.J., and BECKERING and LETICA, JJ.

Beckering, J. (*dissenting*).

In this child protective proceeding, respondent mother appeals as of right the trial court's order terminating her parental rights to the minor child, LR, under MCL 712A.19b(3)(b)(*i*) (parent's act caused physical injury), MCL 712A.19b(3)(g) (failure to provide proper care and custody), and MCL 712A.19b(3)(j) (reasonable likelihood that child will be harmed if returned to parent).  On appeal, respondent argues that the trial court erred in terminating her parental rights because petitioner, the Department of Health and Human Services, failed to make reasonable efforts to reunite her with her newborn child, LR, and that termination of her parental rights was not in LR's best interests.  Based on my interpretation of the applicable statutes and existing Supreme Court precedent, I agree that the trial court erred in terminating respondent's parental rights without first requiring petitioner to make reasonable efforts for reunification in accordance with MCL 712A.19a(2).  I would reverse and remand for further proceedings.

## I.  FACTS

On September 19, 2018, petitioner filed an original permanent custody petition seeking to terminate respondent's parental rights to two-month old LR.  The petition alleged that it was contrary to LR's welfare to remain in respondent's care due to the risk of harm related to physical abuse, and it cited respondent's history of alcoholism, her disclosure of using alcohol throughout her pregnancy, and her acknowledgment that alcohol affects her ability to parent.  The petition also indicated that respondent has another child, AF, who was not the subject of the petition because she was in a legal guardianship with her paternal grandmother.  As evidence of physical abuse, the petition noted LR's physical characteristics consistent with Fetal Alcohol Syndrome (FAS),  including microcephaly, a thin upper lip, a clenched jaw, lower set ears, webbed feet, no testes, an intraventricular hemorrhage, hydrocephalus, cystic encephalomalacia,

-1-

and a small heart murmur.[1] The petition sought termination of respondent's parental rights pursuant to MCL 712A.19(b)(3)(a), (b)(i) and (ii), (g), (j), (k)(i), (iii), (iv), and (v).[2]

Following the preliminary hearing[3] and a pretrial hearing, the case proceeded to a bench trial on November 7, 2019. At the hearing, CPS specialist Kiana Anderson, acting as petitioner, and LR's father testified. LR's medical records were also admitted into evidence. Anderson testified that LR had been released from the hospital and that his medical records indicated he had physical characteristics consistent with FAS. LR did not test positive for substances at the time of his birth. Anderson recounted that respondent admitted drinking alcohol throughout her pregnancy, that she drinks six beers daily, a problem she's had for three or four years, and that she wants to get treatment. She also said that respondent was visiting LR "very often" at the hospital. On one occasion, respondent needed to sign a surgical consent form, but she showed up intoxicated, and the hospital was unable to accept her consent; she returned later and signed the form. According to Anderson, this was the only report of respondent showing up at the hospital intoxicated.

Anderson testified that LR's medical records indicate he may need lifelong medical care associated with his multiple conditions, although at the time of the hearing he was doing well under the circumstances. She said that the parents told her they wished to give LR to respondent's mother, as they both knew respondent had an alcohol problem. Anderson clarified, however, that respondent and father were not actually voluntarily giving up their parental rights. Anderson also testified that respondent had an older child, AF, for whom respondent had not provided care in more than three years. AF had been in a guardianship with her paternal grandmother since 2016, due to respondent's alcoholism as well as domestic violence with AF's father at the time the guardianship was formed.

Regarding respondent's mental health, Anderson testified that respondent said she has severe depression and anxiety, and had been diagnosed with post-traumatic stress disorder, but she had stopped taking her required medication because she was pregnant. Anderson admitted that petitioner had not provided respondent any reunification services, but stated that was because petitioner was seeking termination of respondent's parental rights.

---

[1] At the preliminary hearing, CPS Specialist Kiana Anderson testified that medical staff told her FAS cannot be a diagnosis until later on in life; hence, they indicated that LR had characteristics consistent with FAS. Anderson agreed that the medical staff speculated that LR's injuries were perhaps the result of FAS. Anderson also testified that respondent had no prior CPS history.

[2] MCL 712A.19(b)(3)(a)(abandonment) and (b)(ii)(the parent who had the opportunity to protect the child from abuse failed to do so) did not apply to respondent, but to father, whom petitioner believed at the time to be the putative father.

[3] The preliminary hearing was continued over the course of three dates due to respondent's indication of having Indian Heritage, requiring compliance with the Indian Child Welfare Act (ICWA), and the filing of an amended petition to add LR's father as a respondent in the proceedings. Father's parental rights, though also terminated, are not at issue in this appeal.

Father testified that he knew respondent was drinking, but that she was drinking less while pregnant, and approximated that to be five beers a day. As father was testifying that he wanted respondent's mother to adopt LR, the court went off the record and the proceedings abruptly ended.

In a November 21, 2018 opinion and order, the trial court concluded that it had jurisdiction under MCL 712A.2(b). Summarizing the evidence presented at trial, the trial court found statutory grounds to terminate under MCL 712A.19b(3)(b)(i), (g), and (j), and it concluded that termination of mother's parental rights was in LR's best interests.

## II. ANALYSIS

Respondent argues that the trial court erred in terminating her parental rights because petitioner failed to make reasonable efforts to reunite her with LR, in violation of MCL 712.19. Petitioner agrees that generally, reasonable efforts must be made to reunite the parent and the child, as required by MCL 712A.19a(2), and that the sufficiency of petitioner's efforts toward reunification is relevant to the sufficiency of the evidence to establish one of the statutory bases for termination of parental rights. Petitioner contends, however, that "such efforts are not required where the case proceeds under an original petition for termination." A key question in this case is when is it okay to proceed under an original petition for termination and not make reasonable efforts at reunification? Based on my interpretation of the applicable statutes and Supreme Court precedent, it is only in the presence of one of the aggravated circumstances expressly delineated in MCL 712A.19a(2)(a) through (d) that such efforts toward reunification need not be made.

### A. WHEN REASONABLE EFFORTS ARE REQUIRED

According to MCL 712A.19a(2), "[r]easonable efforts to reunify the child and family must be made in all cases except if any of the following apply:

(a) There is a judicial determination that the parent has subjected the child to aggravated circumstances as provided in section 18(1) and (2) of the child protection law, 1975 PA 238, MCL 722.638.

(b) The parent has been convicted of 1 or more of the following:

(*i*) Murder of another child of the parent.
(*ii*) Voluntary manslaughter of another child of the parent.
(*iii*) Aiding or abetting in the murder of another child of the parent or voluntary manslaughter of another child of the parent, the attempted murder of the child or another child of the parent, or the conspiracy or solicitation to commit the murder of the child or another child of the parent.
(*iv*) A felony assault that results in serious bodily injury to the child or another child of the parent.

(c) The parent has had rights to the child's siblings involuntarily terminated and the parent has failed to rectify the conditions that led to the termination of parental rights.

-3-

(d) The parent is required by court order to register under the sex offenders registration act.

MCL 722.638(1) states in relevant part:

(1) The department shall submit a petition for authorization by the court under section 2(b) of chapter XIIA of 1939 PA 288, MCL 712A.2, if 1 or more of the following apply:

(a) The department determines that a parent, guardian, or custodian, or a person who is 18 years of age or older and who resides for any length of time in the child's home, has abused the child or a sibling of the child and the abuse included 1 or more of the following:

* * *

(*iii*) Battering, torture, or other severe physical abuse.

* * *

(*iv*) Loss or serious impairment of an organ or limb.

(*v*) Life threatening injury.

* * *

MCL 722.638(1) requires petitioner to submit a petition for the court's authorization where a child has suffered from or is at risk of certain types of aggravated abuse. If a parent is a suspected perpetrator of any aggravated abuse described in subsection (1) or is suspected of placing the child at an unreasonable risk of harm due to the parent's failure to take reasonable steps to intervene to eliminate that risk, then subsection (2) requires petitioner to include in this mandated petition a request for termination at the initial dispositional hearing. MCL 722.638(2).[4]

Quoting MCL 712A.19a(2), our Supreme Court has explicitly stated that "[r]easonable efforts to reunify the child and family must be made in *all* cases except those involving

---

[4] MCL 722.638(2) provides:

In a petition submitted as required by subsection (1), if a parent is a suspected perpetrator or is suspected of placing the child at an unreasonable risk of harm due to the parent's failure to take reasonable steps to intervene to eliminate that risk, the department shall include a request for termination of parental rights at the initial dispositional hearing as authorized under section 19b of chapter XIIA of 1939 PA 288, MCL 712A.19b.

aggravated circumstances" not present in that case. *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010) (quotation marks omitted). See also *In re Rood*, 483 Mich 73, 99-100; 763 NW2d 587 (2009) (quotation marks omitted) ("Under MCL 712A.19a(2), [r]easonable efforts to reunify the child and family must be made in all cases except those involving aggravated circumstances not present here."). In *In re Hicks*, 500 Mich 79, 85; 893 NW2d 637 (2017), our Supreme Court again noted that "[u]nder Michigan's Probate Code, the Department has an affirmative duty to make reasonable efforts to reunify a family before seeking termination of parental rights." In support, it cited MCL 712A.18f(3)(b) and (c)[5], MCL 712A.19a(2), and noted in a footnote that "There are certain enumerated exceptions to this rule, see MCL 712A.19a(2), none of which apply to this case." *Id*, 500 Mich at 85, n 4. See also MCR 3.965(C)(4); MCR 3.976(B)(1). In other words, the portal to proceeding "past go" and seeking termination of parental rights at the outset without bothering to make reunification efforts is framed by the parameters of MCL 712A.19a(2).[6] I would conclude that petitioner was required to provide respondent with

---

[5] MCL 712A.18f(2) provides that "[b]efore the court enters an order of disposition in a proceeding under [MCL 712A.2(b)] of this chapter, the agency shall prepare a case service plan that shall be available to the court and all the parties to the proceeding." MCL 712A.18f(3) dictates the requirements of a case service plan and what it must include, such as efforts to be made by the child's parent to enable the child to return to his or her home, and efforts to be made by the agency to return the child to his or her home.

[6] In support of its contention that reasonable efforts to reunify a child with their parent are not required in cases where termination is the Department's goal, petitioner cites to MCL 712A.19b(4), MCR 3.977(E), and *In re HRC*, 286 Mich App 444, 463; 781 NW2d 105 (2009). The cited authorities confirm the accuracy of petitioner's statement, but they do not address petitioner's *authorization* for seeking termination in an original petition and entitlement to relief from its duty to provide reunification services. MCL 712A.19b(4) provides in relevant part that if petitioner files a petition to terminate the parental rights to a child, the court may enter a termination order at the initial dispositional hearing, and MCR 3.977(E) sets forth the circumstances under which the court must order termination of the respondent's parental rights at the initial disposition. Neither the statute nor the court rule, however, provides authority for petitioner to file an original petition seeking termination in the first place. *In re HRC*, the trial court terminated respondent's parental rights at the initial disposition in part because he had sexually abused two of his children. This Court addressed, among other issues, whether the petitioner should have provided reunification services for the respondent-father. Petitioner sought termination in its original petition based on the allegations of two of the victims, changed its request to temporary custody when the accusers recanted their allegations, and then refiled the termination petition when new evidence of the father's sexual abuse of the children emerged. *In re HRC*, 286 Mich App at 446-448. This Court followed its assertion that "[p]etitioner . . . is not required to provide reunification services when termination of parental rights is the agency's goal[]" with the observation that, under the circumstances, MCL 722.638(1)(a)(*ii*) required petitioner to file an original petition seeking termination. Thus, *HRC* is consistent with the principle that petitioner must provide reunification services in all cases except those involving certain exceptional circumstances.

reasonable efforts at reunification unless aggravated circumstances under MCL 712A.19a(2) existed.[7]

## B. AGGRAVATED CIRCUMSTANCE UNDER MCL 712A.19a(2).

Because reasonable efforts at reunification must be made in "*all* cases" except in the presence of one of the aggravated circumstances set forth in MCL 712A.19a(2), this Court must next determine whether any of the facts alleged in the petition qualify as an aggravated circumstance. *Mason*, 486 Mich at 152. Although the petition did not expressly state that it sought termination at the initial disposition under MCL 722.638(1) and (2), obviating the need for reasonable efforts pursuant to MCL 712A.19a(2)(a), the petition no doubt lends itself to that interpretation. Petitioner sought termination as to respondent under MCL 712A.19b(3)(b)(*i*), a subparagraph that refers to a physical injury caused by a parent's act. Petitioner referred throughout this proceeding to respondent's alcoholism, the fact that she continued to drink heavily during her pregnancy, and that the child at issue was born in critical condition with characteristics associated with FAS. Petitioner also identified MCL 712A.19b(3)(k)(*iii*), (*iv*), and (*v*) as statutory grounds for the termination of respondent's parental rights. Termination is appropriate under these subparagraphs where clear and convincing evidence establishes that a parent's abuse of a child included "[b]attering, torture, or other severe physical abuse," "[l]oss or serious impairment of an organ or limb," or "[l]ife-threatening injury," language mirroring that

---

I acknowledge that in *In re Moss*, 301 Mich App 76, 91; 301 NW2d 182 (2013), this Court quotes *In re HRC* for the apparent proposition that a petitioner is not required to provide reunification services when termination of parental rights is the agency's goal, but it neglects to point out that *In re HRC* explicitly entailed aggravated circumstances under MCL 722.638(1)(a)(ii). *In re Moss* cites as corroborative authority MCL 712A.19b(4), MCR 3.961(B), and MCR 3.977(E); but *In re Moss*, itself, entailed an aggravated circumstance, as the respondent mother had attempted to suffocate her youngest daughter. *Id*. at 82. To the extent *In re Moss* stands for the proposition that reasonable efforts at reunification are not required in cases *other than* those with aggravated circumstances set forth in MCL 712A.19a(2), it runs afoul of our Supreme Court's explicit statements to the contrary in *In re Mason*, 486 Mich at 152, *In re Rood*, 483 Mich at 99-100, and *In re Hicks*, 500 Mich at 85. We are bound by Supreme Court precedent. *In re Nestorovski Estate*, 283 Mich App 177, 206; 769 NW2d 720 (2009) ("Supreme Court precedent that is binding on this Court does not permit an inferior court, appellate or trial, to overrule Supreme Court precedent.")

[7] I recognize that in a couple of unpublished opinions of this Court, MCL 722.638(3) has been cited as justification for a petitioner seeking termination at the initial disposition without having to provide reasonable efforts in cases that do not involve aggravated circumstances as described in MCL 722.638(1). But MCL 712A.19a(2)(a) cites specifically only to MCL 722.638(1) and (2), not (3). This renders (3) seemingly at odds with the limiting parameters of MCL 712A.19a(2). But in light of our Supreme Court's pronouncements in *In re Mason*, 486 Mich at 152, *In re Rood*, 483 Mich at 99-100, and *In re Hicks*, 500 Mich at 85, I believe this Court is bound to restrict termination of parental rights without reunification efforts to only those instances with aggravated circumstances as set forth in MCL 712A.19a(2).

in MCL 722.638(1)(a)(*iii*), (*iv*), and (*v*). Thus, the grounds under which petitioner sought termination of respondent's parental rights in its original petition reasonably suggest that petitioner believed respondent's prenatal conduct constituted severe physical abuse resulting in the conditions associated with FAS, and thus fell under MCL 722.638(1) and (2).[8]

However, according to its plain language, MCL 722.638(1) applies to a "child," and our Legislature has not expressly defined "child" to include an embryo or fetus for purposes of the statutes governing the termination of parental rights or child protection. MCL 712A, the chapter in the Probate Code of 1939, MCL 701.21 *et seq.*, governing jurisdiction, procedure, and disposition in termination of parental rights cases, does not define "child." Elsewhere, the Probate Code defines "child" as "an individual less than 18 years of age." MCL 710.22(j) (adoption code). The Child Protection Law, MCL 722.621 *et seq.*, defines "child" as "a person less than 18 years of age[,]" see MCL 722.622(f), as does the Child Abuse and Neglect Prevention Act, MCL 722.602 *et seq.*, see MCL 722.602(1)(a).[9] The Probate Code defines "person" as "an individual, partnership, corporation, association, governmental entity, or other legal entity." MCL 710.22(q). Thus, neither the Probate Code, nor the Child Protection Law, nor the Child Abuse and Neglect Prevention Act specifically define "child" or "person" to include an embryo or fetus.

In addition, this Court has declined to accomplish by judicial amendment that which the Legislature has not expressly intended. See *In Matter of Dittrick Infant*, 80 Mich App 219, 223; 263 NW2d 37 (1977). In *Dittrick*, this Court considered whether the probate court had jurisdiction to enter an order concerning the custody of an unborn child pursuant to MCL

---

[8] Also supporting this inference is an order dated October 16, 2018. In that order, the court indicated that reasonable efforts to avoid or eliminate the child's removal from the home were not required due to the parents' subjecting the child to "severe physical abuse as provided in MCL 722.638(1) and (2), and as evidenced by child born with fetal alcohol symdrome [sic] and other injuries." This is the only order that refers to MCL 722.638 and indicates that reunification services are not required. Two orders issued September 20, 2018, indicate that petitioner must make reasonable efforts at reunification, and do not indicate the presence of aggravated circumstances under MCL 712A.19a(2)(a) through (d) or MCL 722.638(1) or (2). The same is true for two orders issued on November 7, 2018, one after the conclusion of the twice-continued preliminary hearing, and the other after the pretrial hearing, both of which occurred on the same date. In the order following termination of respondent's parental rights, the court reported that reasonable efforts were made to preserve and unify the family to make it possible for the child to safely return home, and that those efforts were unsuccessful. "[I]t is axiomatic that a court speaks through its orders." *People v Kennedy*, 384 Mich 339, 343; 183 NW2d 297 (1971). In this case, however, it is not entirely clear what the court is saying. But the record is clear that no case service plan was ever prepared and no services were ever offered or provided to respondent.

[9] Although the probate codes uses "individual" to refer to a child, and the compilation of statutes dealing with children uses "person," there is no meaningful difference between the two words. In 1994, the legislature substituted the word "individual" for "person" throughout the probate code. 1994 PA 222, effective January 1, 1995.

712A.2. MCL 712A.2(b)(2) granted the probate court "[j]urisdiction in proceedings concerning any child[10] under 17 years of age found within the county" where certain circumstances made the child's home or environment an unfit place for the child to live. In *Dittrick*, the respondent-parents were undergoing the termination of their parental rights to an older child based on the physical and sexual abuse of the child when the mother became pregnant. *Dittrick*, 80 Mich App at 221. Believing birth to be imminent, petitioner filed a petition seeking temporary custody of the unborn child. *Id*. In determining that the probate court could not take jurisdiction over an unborn child, this Court reasoned:

> We recognize that 'child' could be read as applying even to unborn persons. However, our reading of other sections of Chapter XIIA of the Probate Code convinces us that the Legislature did not intend application of these provisions to unborn children.

The Court went on to make the following suggestion:

> The Legislature may wish to consider appropriate amendments to the Probate Code. Indeed, the background of the present case has convinced us that such amendments would be desirable. However, the code as now written did not give the probate court jurisdiction to enter its original order in the present case. We decline by judicial amendment to do that which, at the time of enactment, the Legislature did not contemplate. [*Id*.]

In *In re Baby X*, 97 Mich App 111, 115; 293 NW2d 736 (1980), a case with facts similar to the present one, this Court was asked to decide "whether prenatal conduct, specifically, extensive narcotics ingestion by the mother can constitute neglect sufficient for the probate court's assertion of jurisdiction" under MCL 712A.2(b). The petitioner argued that the mother had so neglected her child during pregnancy by taking narcotics that the probate court should exercise jurisdiction. The probate court found sufficient evidence of neglect to take temporary custody of Baby X, and the circuit court affirmed. The mother appealed in this Court, arguing that "prenatal conduct cannot constitute neglect or abuse under the Probate Code; therefore, the probate court wrongly asserted jurisdiction." *Id*. at 114. This Court noted that "while there is no wholesale recognition of fetuses as persons . . . fetuses have been accorded rights under certain limited circumstances." *Id*. at 115 (indicating tort actions available to fetuses or to children born, but who suffered injury as fetuses). Reasoning that because fetuses "have a legal right to begin life with a sound mind and body," *id*., and because "this Court recognized that mistreatment of a child is probative of how a parent may treat other soon-to-be-born siblings," *id*. at 116, this Court concluded that "prenatal treatment can be considered probative of a child's neglect as well," *id*. Thus, it held "a newborn suffering narcotics withdrawal symptoms as a consequence of prenatal maternal drug addiction may properly be considered a neglected child within the jurisdiction of the probate court." *Id*. at 116. The Court continued, however, "[w]e pass no judgment upon whether such conduct will suffice to permanently deprive a mother of custody. Such custody

---

[10] In 1996 PA 250, effective January 1, 1997, the Legislature replaced "child" with "juvenile."

determinations will be resolved at the dispositional phase where prenatal conduct will be considered along with postnatal conduct." *Id*.[11]

The Legislature has amended the relevant statutes multiple times since resolution of *Dittrick* and *Baby X*, yet without specifically including embryos and fetuses in their protections.[12] The relevant statutory language does not signal the Michigan Legislature's intent that a mother's prenatal conduct constitutes "child abuse." See *People v Jones*, 317 Mich App 416, 429, 432; 894 NW2d 723 (2016) (holding that a fetus is not a "person" for purposes of first-degree child abuse, and noting that where the Legislature has intended to provide protections for embryo or fetuses, it has done so by specifically including them in the statutory language). The primary goal of statutory interpretation is to ascertain and give effect to the Legislature's intent. *Mich Ed Ass'n v Secretary of State* (*On Rehearing*), 489 Mich 194, 217; 801 NW2d 35 (2011). The first criterion in determining intent is the specific language of the statute at issue. *United States Fidelity Ins & Guaranty Co v Mich Catastrophic Claims Ass'n* (*On Rehearing*), 484 Mich 1, 13; 795 NW2d 101 (2009). In the absence of any indication of legislative intent that a mother's prenatal conduct constitutes abuse of the child, I do not think that MCL 722.638(1) applies to respondent-mother's prenatal conduct.[13] Accordingly, subsection (2) did not require petitioner to seek termination in its original petition and allow it to omit making reasonable efforts at reunification. The very purpose of MCL 712A.19a(2) is to give parents a chance to

---

[11] The Court recognized that under the probate code, "a permanent custody order must be based on circumstances which establish or seriously threaten neglect of the child for the long-run future. The quantum of neglect sufficient for temporary custody or merely establishing jurisdiction implicitly must be less, i.e. temporary neglect." *Id*. at 115-116 (quotation marks and citation to authority omitted).

[12] Coincidentally, this very topic was addressed in a recent article by Frank E. Vandervort in The Michigan Bar Journal. Vandervort, *Prenatal Drug Exposure as Aggravated Circumstances*, __Mich B J 24 (November 2019). Mr. Vandervort points out that "federal law allows each state to define a set of 'aggravated circumstances' cases in which the state need not make efforts to reunify an abused or neglected child with his or her parent, but may instead seek immediate termination of parental rights." *Id*. at 26. Citing MCL 722.638 and MCL 712A.19a(2), he then concludes that "[p]renatal exposure, therefore, constitutes aggravated circumstances," and that "a petition alleging prenatal exposure must seek termination of parental rights at the initial disposition." *Id*. Mr. Vandervort fails to acknowledge that our Legislature has not deemed a fetus a child for purposes of MCL 722.638. It may be time for the Legislature to consider whether a parent's prenatal conduct can result in injuries that constitute aggravated circumstances for purposes of MCL 722.638 and MCL 712A.19a(2). However, given the significant ramifications of such a policy decision, I believe it for the Legislature to decide, not for this Court to impose by judicial amendment. See *Dittrick*, 80 Mich App at 221.

[13] Per *In re Baby X*, respondent's prenatal conduct can certainly be considered along with her postnatal conduct at the dispositional phase after services are provided in accordance with MCL 712A.19a(2). *In re Baby X*, 97 Mich App at 116.

rectify the conditions that caused their child's removal from the home, absent specifically delineated aggravated circumstances. In this instance, LR was in safe hands, and petitioner owed respondent reasonable efforts to overcome her obstacles, as serious as they were.

Because I believe respondent was entitled to reunification services, I would reverse the trial court and remand for further proceedings. Respondent is entitled to reasonable efforts at reunification before the trial court proceeds to a termination decision. MCL 712A.18f(c) and (d); MCL 712A.19a(2). "As part of these reasonable efforts, the Department must create a service plan outlining the steps that both it and the parent will take to rectify the issues that led to court involvement and to achieve reunification." *In re Hicks*, 500 Mich at 86-87. See also *In re Mason*, 486 Mich at 156; and *In re Rood*, 483 Mich at 76 (quotation marks and citation omitted) ("[W]hen the State moves to destroy weakened familial bonds, it must provide the parents with fundamentally fair procedures.")

Based on my conclusion that termination at the initial disposition was improper, respondent's best interests argument would be rendered moot.


/s/ Jane M. Beckering